*998
 
 OPINION
 

 Per Curiam:
 

 BACKGROUND
 

 Appellants Mark and Karen Keesee own a residence located at 1160 Whippletree Lane, Fernley, Nevada. The adjoining property, 1170 Whippletree Lane, is owned by the woman who sold the Keesee’s their residence. This woman, a resident of Northern California, allows the Keesee’s to use a blue metal shed located behind 1170 Whippletree.
 

 On August 26, 1990, Deputy James Neal and Corporal Russ Cadwallader of the Lyon County Sheriff’s Department made a routine traffic stop on a Dodge Raider which had run a stop sign. The driver, Cheryl Russell (Cheryl), could not produce a driver’s license, proof of insurance or registration of the vehicle. The deputies noticed that Cheryl’s demeanor was extremely nervous and she was trying to be as cooperative as possible.
 

 A short while later, Stanley Moss appeared on the scene. He
 
 *999
 
 identified himself as the owner of the Dodge that Cheryl was driving. He too, appeared to be nervous and was perspiring profusely. Deputy Neal wrote Cheryl a traffic citation and then she and Moss drove away, leaving the Dodge at the side of the road.
 

 The next day, Deputy Neal noticed the Dodge was still parked at the side of the road so he decided to run a computer search of its vehicle identification number (VIN). While he was obtaining its VIN he laid his sunglasses on the hood of the Dodge. After obtaining the VIN he drove away without retrieving his sunglasses.
 

 Later that day, while sitting at the Truck Inn Restaurant finishing a report, Deputy Neal realized he did not have his sunglasses. After retracing his steps, he realized that he must have left his sunglasses on the Dodge. Deputy Neal drove to where the Dodge was parked and searched the area with no success. Several hours later, Deputy Neal saw Stanley Moss in the RV parking area of the Truck Inn. He and Corporal Cadwallader went to Stanley Moss’ fifth-wheel trailer to inquire about the sunglasses. Moss gave the deputies general directions to Mark and Karen Keesee’s residence, where he believed the Dodge was located. The deputies drove to that location and retrieved the sunglasses from Mark Keesee.
 

 Afterwards, the deputies went back to the Truck Inn where they were approached by Cheryl. Cheryl told the deputies that: (1) Stanley Moss was trafficking in drugs; (2) that she had been inside Moss’ fifth-wheel trailer and had seen drug activity taking place; (3) that Moss was planning to leave the area because he thought the police were suspicious; (4) Cheryl had been at the Keesee’s residence the night before, and had smelled a strong odor that resembled nail polish; and (5) when she inquired about the odor she was told it was better for her not to know. Further, Cheryl stated that she was in fear of her life and that she wanted the deputies assistance in returning to California.
 

 The deputies asked Deputy Tilton to conduct surveillance on the fifth-wheel trailer and attached Chevrolet pickup truck at the Truck Inn while they went to the magistrate and applied for a search warrant. During that surveillance, Deputy Tilton observed the pickup truck and trailer leave the Truck Inn and go to Whippletree Lane.
 

 During the proceeding for the search warrant, the deputies explained the circumstances surrounding the vehicle stop of the Dodge the previous afternoon, and how they met Cheryl Russell and Stanley Moss and their demeanor during the traffic stop. They also informed the magistrate that Cheryl had indicated that drug dealings were being transacted in the fifth-wheel trailer and
 
 *1000
 
 at the Keesee’s residence where the trailer was now situated. However, the deputies erroneously told the magistrate that the residence was located on Winnie Lane.
 

 Based on that information, the magistrate granted oral permission “to search the fifth wheel trailer and residence and any attached buildings or buildings thereof where [contraband] could be held . . . and the vehicles.” However, the written search warrant was narrower than the oral permission to search given by the magistrate. The written search warrant did not include attached buildings and was limited to:
 

 a travel trailer, license number 1CF1550, California, in a 1989 Chevrolet pickup truck, license number 3X40463, California, and/or in the residence on Winnie Lane where the vehicle is presently located.
 

 When the deputies went to execute this warrant, they discovered that the address was incorrect and that the correct address was 1160 Whippletree Lane. Consequently, the deputies appeared again before the magistrate and were given permission to search “the correct address which is 1160 Whippletree and any ah . . . [sic] the vehicles and the travel trailer which are at that residence.”
 

 Later that day, after searching Stanley Moss’ Chevrolet pickup which was located at 1170 Whippletree Lane at the time of the search, and after finding three pounds of methamphetamine in the pickup, the deputies went back to the magistrate and requested an additional warrant to search the residence at 1170 Whippletree Lane. The probable cause presented to the magistrate in support of the new search warrant was: (1) the two residences at 1160 and 1170 Whippletree Lane were next door to each other; (2) the fifth-wheel trailer had been parked at 1160 Whippletree and the pickup track was parked at 1170 Whippletree; (3) a substantial amount of a controlled substance had already been discovered in the pickup truck parked at 1170 Whippletree; and (4) when the deputies arrived to execute the first search warrant, Candy Moss ran from the pickup truck to the residence at 1170 Whippletree where she threw drugs and a hypodermic syringe kit underneath the residence and then tried to enter the back door of the residence at 1170 Whippletree before she was stopped by the deputies. The magistrate orally authorized the search of 1170 Whippletree Lane in addition to locations requested earlier. But again, the written search warrant was narrower than the oral permission given by the magistrate.
 

 Nevertheless, the deputies searched the residence at 1170 Whippletree and an unattached blue shed located at the rear of that address. Inside the shed the deputies found cardboard boxes
 
 *1001
 
 which contained items suspected to be used in the manufacture of methamphetamine. Consequently, Mark Keesee and Karen Kee-see were arrested and charged with: (1) conspiracy to manufacture a controlled substance; (2) manufacturing a controlled substance; (3) two counts of possession of a controlled substance; (4) possession of a controlled substance for the purpose of sale; and (5) using or being under the influence of a controlled substance.
 

 Appellants moved the district court for an order to suppress the evidence seized pursuant to the search warrants. That motion was denied by the district court and the case proceeded to trial. After the conclusion of the State’s case-in-chief, appellants pled guilty pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), and Tiger v. State, 98 Nev. 555, 654 P.2d 1031 (1982) to one count of possession of a controlled substance and being under the influence of a controlled substance. In addition, appellant Mark Hugh Keesee pled guilty to one count of conspiracy to manufacture a controlled substance. The State dismissed all remaining charges. As a result, Mark Keesee was sentenced to four years in Nevada State Prison and Karen Keesee was sentenced to four years probation.
 

 LEGAL DISCUSSION
 

 Probable Cause
 

 The Fourth Amendment to the United States Constitution provides:
 

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 

 Similarly, Article 1, Section 18 of the Nevada Constitution provides:
 

 The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized.
 

 It is well established that arrests and searches must be based upon probable cause. Draper v. United States, 358 U.S. 307
 
 *1002
 
 (1959). “Probable cause” requires that law enforcement officials have trustworthy facts and circumstances which would cause a person of reasonable caution to believe that it is more likely than not that the specific items to be searched for are: seizable and will be found in the place to be searched. Carrol v. United States, 267 U.S. 132 (1925). In this regard, NRS 179.045 provides, in pertinent part:
 

 1. A search warrant may issue only on affidavit or affidavits sworn to before the magistrate and establishing the grounds for issuing the warrant .... If the magistrate is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched.
 

 4. The warrant . . . must state the grounds or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof. It must command the officer to search forthwith the person or place named for the property specified.
 

 When the issuance of a search warrant is based upon information obtained from a confidential informant, the proper standard for determining probable cause for the issuance of the warrant is whether, under the totality of the circumstances, there is probable cause to believe that contraband or evidence is located in a particular place. Illinois v. Gates, 462 U.S. 213 (1983); Barrett v. State, 105 Nev. 361, 775 P.2d 1276 (1989). The reviewing court is not to conduct a de novo probable cause determination but instead is merely to decide whether the evidence viewed as a whole provided a substantial basis for the magistrate’s finding of probable cause. Massachusetts v. Upton, 466 U.S. 727 (1984);
 
 see also
 
 1 Wayne R. LaFave, Search and Seizure § 3.1(c) (2d ed. 1987) (a search warrant should be upheld as long as there is a substantial basis for a fair probability that evidence will be found in a particular case).
 

 In the instant case, appellants contend that search warrants were obtained by the deputies solely on the basis of Cheryl’s statements that drug related activities were ongoing, and that no independent investigation of her information was conducted to determine whether Cheryl was reliable or trustworthy. Thus, appellants contend that the deputies’ statements to the magistrate that they suspected the existence of a methamphetamine lab were conclusory and provided no basis that probable cause existed.
 

 
 *1003
 
 However, the record proves otherwise. The deputies first discovered a connection between Cheryl and Stanley Moss when Cheryl was stopped by the deputies for running a stop sign. Moss came to the scene and told the deputies that Cheryl was driving his car. Then, Moss and Cheryl departed together. Obviously, Moss and Cheryl knew each other. Second, Cheryl related firsthand observations of drug activity inside Moss’ fifth-wheel trailer. The deputies knew Moss had a fifth-wheel trailer parked at the Truck Inn because Deputy Neal observed him there when he was searching for his sunglasses. Third, Cheryl told the deputies that when she was at the Keesee’s residence she had smelled a strong odor resembling nail polish and that when Cheryl inquired about the odor she was told it was better for her not to know. Fourth, Cheryl told the deputies that Moss was planning to leave the area because he thought the police were suspicious. This was confirmed when Deputy Tilton observed Moss’ fifth-wheel trailer leave the Truck Inn and move to the Keesee’s residence. Finally, the deputies were also aware of a connection between Stanley Moss and the Keesees because Moss had sent Deputy Neal to the Keesee’s residence to retrieve his sunglasses.
 

 The deputies corroborated the connection between Cheryl Russell and Stanley Moss. They also corroborated Cheryl’s prediction that Moss would be moving his fifth-wheel trailer from the Truck Inn. Further, the deputies corroborated a connection between Stanley Moss and the Keesees. These corroborations tend to give more credence to Cheryl’s statement that she observed drug activity inside Stanley Moss’ fifth-wheel trailer. The oral affidavits presented to the magistrate were not bare bones affidavits devoid of factual support or simply conclusory statements. Those affidavits contained specific factual allegations indicating that criminal activity was taking place. In light of these considerations, and the totality of the circumstances test set forth in
 
 Gates,
 
 we conclude that probable cause existed for the issuance of a search warrant.
 

 Search Warrants
 

 Appellants contend that even if there was probable cause to search the fifth-wheel trailer, there was no probable cause to search the residence and its outbuildings. Thus, appellants contend that the search warrant was overbroad.
 

 The following dialogue was exchanged between the magistrate and the deputies during the application for the search warrant:
 

 THE COURT: What is the current location of that fifth wheel trailer?
 

 
 *1004
 
 [Deputy] Cadwallader: The current location at this present time, is a residence located on [Whippletree Lane] in this town.
 

 THE COURT: Did you. . . . Have you done any search of the area?.
 

 [Deputy] Cadwallader: An actual search, no.
 

 THE COURT: The person who was in that trailer came and indicated to you that there was some type of drug activities taking place within the premise?
 

 [Deputy] Cadwallader: Not only within that premise, Your Honor, but also at the location where the fifth wheel trailer is parked right now.
 

 THE COURT: Okay, I will give you at this point, I will grant you permission to search the fifth wheel trailer and the residence and any attached buildings or buildings thereof where [contraband] could be held.
 

 From these exchanges it is evident that the deputies had information that drug activities were occurring at the Keesee’s residence as well as in the fifth-wheel trailer. Consequently, the magistrate granted permission for the deputies to also search the residence and buildings within its curtilage.
 

 Other defendants have objected with some frequency, but with little success, to search warrants which describe more than one place or building as the object of authorized search.
 
 See generally
 
 2 Wayne R. LaFave, Search and Seizure § 4.5(c) (2d ed. 1987). Cases in which the courts have had the least difficulty are those in which the warrant makes reference to barns, sheds, and outbuildings within the curtilage. United States v. Moore, 743 F.2d 254 (5th Cir. 1984) (search warrant for a house covers garage thirty-five to forty feet from house); United States v. Whitten, 706 F.2d 1000 (9th Cir. 1983) (a warrant may authorize a search of an entire street address while reciting probable cause to only a portion of the premises if the defendant is in control of the whole premises); United States v. Williams, 687 F.2d 290 (9th Cir. 1982) (warrant authorizing search of “premises” in a rural area includes buildings on that land); Barton v. State, 288 S.E.2d 914 (Ga. Ct. App. 1982) (warrant for premises authorized search of shed twenty feet behind house and within curtilage); State v. Trapper, 269 S.E.2d 680 (N.C. Ct. App. 1980) (warrant for house trailer authorized search of shed thirty feet away because it is within the curtilage of the house).
 

 In the instant case, the deputies had obtained information that drug activity was being conducted at the Keesee’s residence. In addition, the Keesees were in control of outbuildings within the
 
 *1005
 
 curtilage of the residence. Thus, under
 
 Whitten
 
 the search warrant was not overbroad even if the police only had probable cause to search a portion of the premises. Moreover, under
 
 Barton
 
 and
 
 Trapper
 
 the deputies could have searched any building within the curtilage of the residence even if the search warrant did not specify outbuildings. Accordingly, we conclude that the search warrants were not overbroad.
 

 CONCLUSION
 

 The search warrants were supported by probable cause and were not overbroad. Moreover, we have considered appellants’ other arguments and find them to be unpersuasive. Accordingly, the judgments of the district court are affirmed.