DANNY WRIGHT, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 25632

April 30, 1996                                    916 P.2d 146

*Karla K. Butko,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Robert E. Estes,* District Attorney, *Eileen Barnett,* Deputy District Attorney, Lyon County, for Respondent.

## OPINION

*Per Curiam:*

In December 1992, the State executed a warrant to search the residence of appellant Danny Wright and found marijuana. The Lyon County District Attorney charged Wright criminally. The State Attorney General filed a complaint for civil forfeiture against certain of Wright's property, including his residence. The

district court denied Wright's motion in the criminal case to suppress the evidence obtained in the search. Pursuant to a stipulation by the parties, Wright paid the State $30,000 for the return of his property, and the district court dismissed the civil action in January 1994. In February 1994, Wright pled guilty to one charge in the criminal case, preserving the right to appeal the denial of his motion to suppress.

Wright now appeals, claiming that the search warrant was issued without probable cause and that the State violated the Fifth Amendment proscription against double jeopardy. We conclude that the first claim lacks merit but the second is meritorious.

## FACTS

On December 17, 1992, a photo lab in Gardnerville informed police that it had photographs of marijuana being grown. The lab had received the negatives and developed the photos that day. The lab informed a narcotics investigator that the photos came from a "D. Wright" with the telephone number 465-2542. The investigator obtained the photos and provided them to a second investigator, Bill Tilton. The Lyon County Sheriff's Office informed Tilton that a "Danny Wright" lived in the town of Wellington and had the same phone number as the one submitted with the negatives. Tilton showed the photos to Lyon County Sheriff's Deputy Mike Fletcher, who recognized some of the scenes depicted in the photos as the yard of the residence of appellant Danny Wright, including a white shed with a fiberglass roof located there. The photos showed marijuana growing in the shed. Fletcher reported that Wright's residence was located on Highway 208 in Wellington. He also informed Tilton that the vegetation and snow cover shown in the photos was consistent with conditions occurring in Wellington from summer through the last couple of weeks of 1992. Motor vehicle records showed a residence address for Danny Wright at 2785 Highway 208, Wellington, Nevada.

On the next day, December 18, 1992, Tilton provided the foregoing information to the justice of the peace of Smith Valley, Lyon County, as set forth in Tilton's own affidavit. Tilton also provided a handwritten statement by Fletcher. The justice of the peace issued a search warrant to Tilton to search the residence and associated outbuildings at 2785 Highway 208, Wellington, Nevada, for specific items, including marijuana plants, seeds, packaging materials, sales records, and indicia of ownership or occupancy of the property. Tilton executed the warrant that same day. The officers involved seized incriminating evidence in the master bedroom of the residence, including about eighteen pounds of marijuana, baggies, and scales. The shed contained dried marijuana stalks and a small bag of seeds.

On January 14, 1993, the Lyon County District Attorney charged Wright with three felonies: possession of marijuana for the purpose of sale, manufacture of a controlled substance, and ex-felon in possession of a firearm. On February 18, 1993, based on the evidence garnered in the criminal case, the Nevada Attorney General filed a complaint for civil forfeiture against certain of Wright's property, including his residence, his vehicle, his backhoe, and a number of firearms.

On February 26, 1993, at the preliminary examination in the criminal case, Wright's counsel cross-examined Investigator Tilton regarding his knowledge of the facts leading to the issue of the search warrant. Tilton said that his knowledge came through the photographs that he had received. Defense counsel asked Tilton:

Q. Did you ascertain when the pictures were taken?
A. No.
Q. Do you know when they were taken?
A. No.
Q. Could have been years ago?
A. It could have been, yeah.

The justice court bound Wright over for trial.

Wright moved to suppress the evidence obtained from the search of his property. A hearing was held on June 28, 1993. At the hearing, Wright's counsel asked Tilton if he ever told the justice of the peace that the photos he relied on to obtain the search warrant "could have been taken at any point in time in any year?", and Tilton replied "No." Wright's counsel argued that the evidence in the photos was stale and therefore insufficient grounds to issue a search warrant, but the district court found from the totality of the circumstances that the evidence was not stale and denied the motion.

On June 14, 1993, the Attorney General and Wright had stipulated to stay the civil action pending resolution of the criminal case. However, on January 7, 1994, before such resolution, the parties filed a Stipulation for Compromise, agreeing that pursuant to NRS 453.301, Wright would pay the State $30,000 and the State would return various items of seized property back to Wright and dismiss the civil action against Wright. The parties also agreed that "this Stipulation shall not be construed in any fashion as an admission pertaining to any criminal charges arising out of the conduct set forth in the civil complaint." The district court adopted this stipulated compromise and dismissed the civil action.

On February 3, 1994, Wright agreed to plead guilty to one count of manufacture of a controlled substance on the condition that he could appeal the denial of his motion to suppress. The

district court canvassed Wright and accepted his plea. On March 28, 1994, the court adjudged Wright guilty and sentenced him to six years in prison.

## DISCUSSION

*Whether the search warrant was issued without probable cause*

Wright argues that the time when the photographs were taken was uncertain and therefore that the photographic evidence was stale. He also claims that the basis for the search warrant was an uncorroborated tip, which is insufficient evidence for issuing a warrant, and that because the photos showed marijuana only in the shed, the search warrant should not have included the residence.

In this case, the justice of the peace issued the search warrant based on Tilton's affidavit, pursuant to NRS 179.045(1). Searches must be based on probable cause. Keesee v. State, 110 Nev. 997, 1001, 879 P.2d 63, 66 (1994). Probable cause requires "trustworthy facts and circumstances which would cause a person of reasonable caution to believe that it is more likely than not that the specific items to be searched for are: seizable and will be found in the place to be searched." *Id.* at 1002, 879 P.2d at 66. This court does not conduct a de novo review but merely decides "whether the evidence viewed as a whole provided a substantial basis for the magistrate's finding of probable cause." *Id.*, 879 P.2d at 67. There is a preference for searches with warrants, and a reviewing court should not adopt a grudging, hypertechnical view of warrant applications, but review them in a common sense, realistic manner. United States v. Ventresca, 380 U.S. 102, 108-09 (1965).

A warrant must be based on "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 210 (1932). Information is stale and probable cause does not exist when it is no longer reasonable to presume that a search will turn up evidence of a crime. State v. Hale, 641 P.2d 1288, 1290 (Ariz. 1982). If an unlawful activity is continuous in nature, the passage of time is less significant. *Id.; see also* State v. Gomez, 623 P.2d 110, 116 (Idaho 1980), *cert. denied,* 454 U.S. 963 (1981). Cultivation of marijuana takes some time and is distinguishable from transitory occurrences such as drug sales. People v. Brown, 212 Cal. Rptr. 907, 908-09 (Ct. App. 1985).

We conclude that it was reasonable for the justice of the peace to find that the photos were not stale evidence based on the following considerations. First, they indicated marijuana cultivation, which is a relatively long-term activity. Second, the photo lab had just received the negatives the day before. More often than not, people have their photos developed soon after they take them. Third, the deputy sheriff familiar with the area found that the photos depicted scenes consistent with conditions in the area over the preceding several months.

Although the photos evidently showed marijuana only in the shed, the search warrant properly permitted search of the residence as well. *See Keesee,* 110 Nev. at 1004-05, 879 P.2d at 68 (warrant may authorize search of entire street address when police have probable cause to search only part of the premises if defendant controls entire premises).

Finally, we reject Wright's characterization of the evidence involved as an uncorroborated tip from an informant of unknown reliability. First, the photos went beyond a mere verbal tip and constituted in themselves objective evidence whose reliability the investigators could evaluate directly. Second, the investigators found information that corroborated the photographic evidence: they found that the name and phone number submitted with the photos matched the name and phone number of the person who owned the property depicted in the photos.

We conclude therefore that probable cause existed to issue the search warrant.

*Whether the judgment of conviction in the criminal case violated the Double Jeopardy Clause*

The Fifth Amendment provides in part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V; *see also* Nev. Const. art. 1, § 8. This Double Jeopardy Clause "at its most fundamental level . . . protects an accused against being forced to defend himself against repeated attempts to exact one or more punishments for the same offense." U.S. v. $405,089.23 U.S. Currency, 33 F.3d 1210, 1215 (9th Cir. 1994), *amended,* 56 F.3d 41 (1995), *cert. granted,* ......... U.S. ........, 116 S. Ct. 762 (1996).

The Supreme Court has concluded that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but

rather can only be explained as also serving either retributive or deterrent purposes, is punishment" for the purposes of double jeopardy analysis. United States v. Halper, 490 U.S. 435, 448 (1989). The Court recognized that "the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain," and "in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole." *Id.* at 449. However, a civil penalty sought in a separate proceeding constitutes punishment when it "bears no rational relation to the goal of compensating the Government for its loss." *Id.* This was the case in *Halper,* where the civil penalty provided a recovery which was "exponentially greater than the amount of the fraud" perpetrated on the government and "many times the amount of the Government's total loss." *Id.* at 445. The Court remanded that case to the district court to allow the government to provide an accounting of its actual damages and costs, which it could properly recover. *Id.* at 449, 452. The decision in *Halper* does not prevent the government from seeking and obtaining both civil and criminal penalties in the same proceeding as long as the total punishment does not exceed that authorized by the legislature. *Id.* at 450.

The Court has also held that civil forfeiture may constitute punishment and violate the Eighth Amendment protection against excessive fines. Austin v. United States, 509 U.S. 602, 113 S. Ct. 2801 (1993). Citing *Halper,* the Court stated that a forfeiture may serve remedial purposes but is subject to the limitations of the Excessive Fines Clause if "it can only be explained as serving in part to punish." *Id.* at 610, 113 S. Ct. at 2806. The Court concluded that the forfeiture of vehicles and real property used or intended to be used to facilitate the commission of certain drug-related crimes constituted punishment for several reasons. First, forfeiture has served historically at least in part as punishment. *Id.* at 619, 113 S. Ct. at 2810. Second, the forfeiture provisions in question applied only to owners involved in drug offenses, not innocent owners; they applied only to property linked to specific drug offenses; and the legislative history of the provisions indicated that Congress intended them to deter and punish drug offenders. *Id.* at 619-20, 113 S. Ct. at 2811. Third, the Court rejected government arguments that the provisions were remedial because they removed instruments of the drug trade from further use and compensated the government for the law enforcement and social costs of the drug trade. "[T]he forfeiture of contraband itself may be characterized as remedial because it removes dangerous or illegal items from society," but this reasoning does not extend to vehicles or real property, the possession of which is not even remotely criminal. *Id.* at 621, 113 S. Ct. at 2811. The Court

concluded that the conveyances and real property forfeitable under the provisions in question varied so dramatically in value that the penalty had no correlation to the costs to society or law enforcement. *Id.* 113 S. Ct. at 2812. The Court noted that in *Halper,* it had focused on whether the sanction as applied in the individual case was punishment because the sanction involved was "a small, fixed-penalty provision" that ordinarily would simply make the government whole. *Id.* at 622 n.14, 113 S. Ct. at 2812 n.14. However, in *Austin* the proper focus was on the forfeiture provisions as a whole because the value of the conveyances and real property forfeitable under them "can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Id. Halper* involved double jeopardy and *Austin* involved excessive fines, but the test for determining whether a civil sanction constitutes punishment is the same in either context. *$405,089.23,* 33 F.3d at 1219.

In light of these controlling cases, this court must determine in the instant case whether the civil forfeiture action and criminal prosecution involved the same offense by Wright, whether they constituted separate proceedings, and whether forfeiture under NRS 179.1156-.119 and NRS 453.301 constitutes punishment. If the answer to these questions is yes, then the State's actions violated the Double Jeopardy Clause.

It is undisputed that the civil action against Wright and his criminal prosecution involved the same offense. Like the criminal charges, the civil complaint is expressly based on the discovery of marijuana at Wright's residence on December 18, 1992. The State has also not disputed that the cases were pursued in separate proceedings. The cases were filed at different times and by different prosecuting authorities and were resolved at different times in different ways. *See $405,089.23,* 33 F.3d at 1216 ("A forfeiture case and a criminal prosecution would constitute the *same* proceeding only if they were brought in the same indictment and tried at the same time.")[1]

---

[1] Other federal circuit courts have found a separately filed civil action and criminal prosecution to be "a single, coordinated prosecution" in some cases. U.S. v. Millan, 2 F.3d 17, 20 (2nd Cir. 1993); U.S. v. One Single Family Residence, 13 F.3d 1493, 1499 (11th Cir. 1994). However, the Ninth Circuit has expressly and persuasively rejected this approach. U.S. v. $405,089.23 U.S. Currency, 33 F.3d 1210, 1216-18 (9th Cir. 1994), *amended,* 56 F.3d 41 (9th Cir. 1995), *cert. granted,* ...... U.S. ......, 116 S. Ct. 762 (1996). Also, even under this approach, the actions taken against Wright were not a single, coordinated prosecution.

The crucial question therefore is whether forfeiture pursuant to NRS 453.301 constitutes punishment. As an initial matter, the State argues that jeopardy never attached in the civil action because the action was dismissed and no judgment was entered. This argument has no merit. Wright and the State expressly stipulated that if Wright paid the State $30,000, the civil forfeiture action against Wright would be dismissed with prejudice and that Wright's residence and other property would be released to him. The district court then adopted the parties' stipulation and dismissed the civil case. Given this stipulated resolution adopted by the district court, we conclude that jeopardy attached in the civil case despite the lack of entry of formal judgment. *Cf.* U.S. v. McCaslin, 863 F. Supp. 1299, 1304 (W.D. Wash. 1994) ("Jeopardy is complete . . . when a judgment based on a guilty plea or an agreed resolution of the case is entered."); Willerton v. Bassham, 111 Nev. 10, 16, 889 P.2d 823, 826 (1995) (judgment entered by court per stipulation of parties is as valid and binding as fully tried matter and bars later action on same claim). Additionally, Wright's guilty plea in the criminal case did not constitute waiver of the double jeopardy claim. United States v. Broce, 488 U.S. 563, 575 (1989) (holding that guilty plea does not waive claim that charge, judged on its face, is one which State may not constitutionally prosecute).

The statutory provisions for forfeiture applied in this case are the following. NRS 453.301(1) provides that controlled substances manufactured, distributed, or acquired in violation of laws regulating controlled substances are subject to forfeiture, pursuant to NRS 179.1156-.119. NRS 453.301(2) provides that raw materials and equipment used in manufacturing or delivering any controlled substance in violation of relevant drug laws are subject to forfeiture. Also subject to forfeiture are all conveyances "which are used, or intended for use, to transport, or in any manner to facilitate the transportation, concealment, manufacture or protection, for the purpose of sale, possession for sale or receipt of property described in subsection 1 or 2." NRS 453.301(5). Also forfeitable are "[a]ll real property and mobile homes used or intended to be used by any owner or tenant of the property or mobile home to facilitate a violation" of relevant drug laws. NRS 453.301(8). Similar provisions allow forfeiture of "[e]verything of value furnished or intended to be furnished in exchange for a controlled substance" and for firearms possessed by violators of relevant drug laws. NRS 453.301(9), (10). However, "[p]roperty may not, to the extent of the interest of any claimant, be declared forfeited by reason of an act or omission

shown to have been committed or omitted without the knowledge, consent or willful blindness of the claimant." NRS 179.1164(2).

[Headnote 18]

NRS 453.301(5) and (8), providing for the forfeiture of conveyances and real property, are essentially the same as the federal provisions at issue in *Austin. Austin,* 509 U.S. at 605 n.1, 113 S. Ct. at 2803 n.1. As in *Austin,* the provisions serve to punish because they apply only to culpable, not innocent, owners and to property linked to specific drug offenses. They are not solely remedial because they provide not only for the removal of dangerous and illegal contraband from society but also for the confiscation of homes, vehicles, and other property. This forfeitable property varies so dramatically in value that the penalty has no correlation to the costs to society or law enforcement. Therefore, civil forfeiture under these provisions constitutes punishment for double jeopardy purposes.

The State asserts that the forfeiture in this case was not disproportionate to its costs and therefore not punishment. It stresses the language in *Halper* where the Court stated that a civil penalty constitutes punishment when it "bears no rational relation to the goal of compensating the Government for its loss." United States v. Halper, 490 U.S. 435, 449 (1989). However, these considerations appear irrelevant under *Austin,* where the Court expressly refused to assess whether the forfeiture executed in the individual case was punishment and instead focused on the forfeiture provisions as a whole. *Austin,* 509 U.S. at 622 n.14, 113 S. Ct. at 2812 n.14; *see also $405,089.23,* 33 F.3d at 1221.

The State also cites two opinions from federal circuit courts in support of its proposition. However, neither opinion is apposite to this case. One case involved the forfeiture of proceeds from illegal drug sales. U.S. v. Tilley, 18 F.3d 295 (5th Cir.), *cert. denied,* 513 U.S. 1015, 115 S. Ct. 574 (1994). The Fifth Circuit distinguished *Austin,* stating:

> Unlike the real estate forfeiture statute that can result in the confiscation of the most modest mobile home or the stateliest mansion, the forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. . . . [T]hese proceeds are roughly proportional to the harm inflicted upon government and society by the drug sale. Thus, the logic of *Austin* is inapplicable . . . .

*Id.* at 300. In the second case, the trial court ordered disgorgement of the defendant's illicit profits from violations of federal

securities laws. S.E.C. v. Bilzerian, 29 F.3d 689 (D.C. Cir. 1994). The appeals court concluded that the disgorgement was solely remedial and did not subject the appellant to an additional penalty because it required him "to give up only his ill-gotten gains." *Id.* at 696.

In the instant case, the statutory provisions permit forfeiture of far more than just illicit profits. Even assuming that limiting a forfeiture under NRS 453.301 in an individual case to such profits would be constitutional, an assumption that *Austin* may not support, the State never established and does not argue that Wright sold any marijuana, although the evidence seized suggests that he planned to do so. Nor, assuming that limiting a forfeiture to the State's costs in an individual case would be constitutional, did the State show that its costs approximated the $30,000 that it received in settling the civil action. The State declares in its brief to this court that it has "no way of assessing the 'rational relation' between the costs incurred by the government and society resulting from Wright's drug activities."

We conclude that the civil forfeiture action imposed a punishment on Wright. As a consequence, his succeeding criminal conviction violates the Double Jeopardy Clause and must be reversed. Desimone v. State, 111 Nev. 1221, 1229, 904 P.2d 1, 6 (1995).

## CONCLUSION

The evidence as a whole provided probable cause for issuance of the search warrant. The photographic evidence was not stale, and the residence was properly included in the scope of the warrant. However, Wright's judgment of conviction in the criminal case violated the Double Jeopardy Clause due to the prior settlement of the civil forfeiture action. Civil forfeiture under NRS 435.301 constitutes punishment, and this punishment attached when Wright was required to pay the State $30,000 in order to regain his property and end the forfeiture proceedings. We therefore reverse the judgment of conviction.