*1179
 
 OPINION
 

 Per Curiam:
 

 On September 11, 1989, Jeanne Collins reported to the Washoe County Sheriff’s Department that her home had been burglarized. Thereafter, she and her husband, Robert Collins, collected reimbursement for the stolen items from Farmers Insurance Company (“Farmers”).
 

 On February 3, 1991, Nevada Highway Patrol (“NHP”) Trooper Ken Gager pulled over and ultimately arrested Mr. Collins. A subsequent search of the car revealed, among other things, a spiral notebook and a tape recorder containing secret access codes to a secured storage unit (“The Vault”) in Reno, vice grips, a blank key, two-way radios, electronic gear and two rare coins that were ultimately determined to be the subject of the insurance claim lodged with Farmers.
 

 The next day, Reno Police executed a search warrant for a fine arts locker that Mr. and Mrs. Collins had rented at The Vault. Several of the items seized matched the items reported stolen in September of 1989.
 

 In August 1995, after a jury found Mr. Collins guilty of burglary, the district court sentenced him to four years in the Nevada Department of Prisons. This conviction is the subject of
 
 *1180
 
 appeal No. 27695. In September 1995, a different jury convicted Mr. Collins of insurance fraud. The judge sentenced him to six years in prison for presenting false information for insurance benefits, six years for conspiracy to provide false information for insurance benefits, and eight years for obtaining money or property by false pretenses to run concurrently. He was also ordered to pay restitution. These convictions are the subject of appeal No. 27810.
 

 Seizure of evidence from the Collins vehicle and The Vault
 

 Prior to both trials, the district court denied a pretrial motion to suppress the evidence found in Mr Collins’ car. Mr. Collins argues that the seizure was tainted by numerous instances of police misconduct. He first contends that his arrest was unlawful because the police did not have probable cause to arrest him. Probable cause “requires that law enforcement officials have trustworthy facts and circumstances which would cause a person of reasonable caution to believe that it is more likely than not” that the person will disregard a written promise to appear.
 
 See
 
 Keesee v. State, 110 Nev. 997, 1002, 879 P.2d 63, 66 (1994). NRS 484.795(1) authorizes a peace officer to arrest an individual who has committed a misdemeanor traffic violation when the officer “has reasonable and probable grounds to believe the person [cited] will disregard a written promise to appear in court.”
 

 We conclude that Mr. Collins’ hostility toward Trooper Gager, his initial refusal to produce his driver’s license, evidence of insurance or registration and his deliberate crumpling of the citation would cause a person of “reasonable caution” to believe that Mr. Collins would disregard the citation. Thus, we conclude that the district court did not err in finding that Trooper Gager had probable cause to arrest Mr. Collins.
 

 Mr. Collins next contends that Trooper Gager’s authority to arrest him ceased when he gave Mr. Collins a copy of the citation. NRS 484.795(1) provides that law enforcement officers may arrest an individual where they have “reasonable and probable grounds to believe that the person will disregard a
 
 written promise
 
 to appear in court.” NRS 484.795(1). (Emphasis added.) NRS 484.795 clearly authorizes an officer to arrest a person after a citation has been issued if the person repudiates the written promise to appear. Therefore, we conclude that Mr. Collins’ argument lacks merit.
 

 
 *1181
 
 Mr. Collins contends that the NHP improperly impounded his car. He argues that Trooper Gager failed to ask him whether he had a preference as to where his car should remain until he could post bail. In deciding whether to impound a vehicle, the question “is not what ‘could have been achieved,’ but whether the Fourth Amendment
 
 requires
 
 such steps. . . . The reasonableness of any particular government action does not necessarily or invariably turn on the existence of alternative or ‘less intrusive means.’ ” Colorado v. Bertine, 479 U.S. 367, 374 (1987) (quoting Illinois v. Lafayette, 462 U.S. 640, 647 (1983)). Mr. Collins’ car was in an unsecured parking lot and no evidence exists that the car or its valuables would remain safe. Mr. Collins’ daughter, who was not yet of driving age, was present, and Trooper Gager testified that there were people gathered around the parking area. Further, Trooper Gager testified that the car was in the “aisleway,” suggesting that it was not in a designated parking space. Accordingly, we conclude that Trooper Gager did not act unreasonably in having the car taken to a more secure location.
 

 Mr. Collins further argues that the evidence found in his car should have been suppressed because the search of his car was an improper inventory search. The police have a duty to inventory the contents of an automobile to protect against claims of theft and to protect the storage bailee against false charges. Heffley v. State, 83 Nev. 100, 103, 423 P.2d 666, 668 (1967). However, “an inventory search must not be a ruse for general rummaging in order to discover incriminating evidence.” Florida v. Wells, 495 U.S. 1, 4 (1990).
 

 As Trooper Gager conducted the search, he came across items that he thought might be indicative of criminal activity and called a detective to examine the inventoried items.
 

 If the search is for the purposes of inventory of personal effects and not exploratory, articles found as a result which supply the foundation for a reasonable suspicion on the part of the police are not subject to unlawful search and seizure. This is so because the police are in a place where they have a right and obligation to be, . . . when they find the objects of seizure.
 

 Heffley,
 
 83 Nev. at 103, 423 P.2d at 667.
 

 Trooper Gager found the items when he was in a place where he had a right and obligation to be. Thus, we conclude that his
 
 *1182
 
 request that an investigator from another department examine the items to determine if they were, in fact, incriminating did not violate the Fourth Amendment’s prohibition against unreasonable searches.
 

 Mr. Collins argues that the police exceeded the scope of a proper inventory search when they read the contents of the spiral notebook and listened to the tape. We conclude that the scope of the inventory search was proper.
 
 See
 
 Michigan v. Thomas, 458 U.S. 259 (1982) (noting that once an inventory search reveals contraband, warrantless search may be properly expanded without showing exigent circumstances);
 
 see also
 
 United States v. Arango-Correa, 851 F.2d 54 (2d Cir. 1988) (opening of notebooks during inventory search analogous to permissive inventory of closed container); State v. Weber, 471 N.W.2d 187 (Wis. 1991) (playing unmarked music cassette tape to properly document it on inventory form within scope of proper inventory search).
 

 Mr. Collins argues that the search warrant for The Vault locker was faulty because it was based on evidence found in the car. Because we conclude that Mr. Collins’ arrest was lawful, and that the impoundment and inventory search of his car was valid, we conclude that the search warrant to search the locker was valid. Accordingly, the district court did not err by denying the motion to suppress.
 

 Grand jury proceedings
 

 On appeal from the burglary conviction, Mr. Collins contends that the prosecuting attorney presented prejudicial and inadmissible hearsay statements to the grand jury.
 

 “The grand jury can receive none but legal evidence, and best evidence in degree, to the exclusion of hearsay or secondary evidence.” NRS 172.135(2); Sheriff v. Frank, 103 Nev. 160, 165, 734 P.2d 1241, 1245 (1987). However, regardless of the presentation of inadmissible evidence, the indictment will be sustained if there is the slightest sufficient legal evidence. Robertson v. State, 84 Nev. 559, 561-62, 445 P.2d 352, 353 (1968).
 

 We conclude that the majority of statements objected to by Mr. Collins were not hearsay but were properly offered as explanations of the officers’ conduct.
 
 See
 
 Wallach v. State, 106 Nev. 470, 796 P.2d 224 (1990). We also conclude that sufficient legal evidence exists to uphold the indictment.
 

 
 *1183
 

 Security codes as personal property
 

 Mr. Collins argues that security codes are not “personal property” and therefore cannot be the subject of larceny. NRS 205.005-205.980 cross-references the definition of personal property to NRS 193.021. Although NRS 193.021 does not specifically include intangible property in its definition, we conclude that the legislature intended proprietary information to fall within the definition.
 
 See, e.g.,
 
 Dreiman v. State, 825 P.2d 758, 761 (Wyo. 1992) (“ ‘ “[PJroperty in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment, and disposal.” ’ ” (quoting Laberton v. General Casualty Co., 332 P.2d 250, 255 (Wash. 1958) (quoting Gasque v. Town of Conway, 8 S.E.2d 871 (S.C. 1940))). We also conclude that by copying down and recording the security access codes, Mr. Collins deprived The Vault of a property interest because his knowledge of the numbers resulted in a loss of the numbers’ value.
 

 Other assignments of error
 

 On appeal from the insurance fraud and obtaining money by false pretenses convictions, Mr. Collins assigns several of the district court’s rulings as error and complains that the convictions are inconsistent.
 

 Mr. Collins contends that the district court improperly admitted evidence that Mr. Collins physically abused Mrs. Collins. We disagree. Mrs. Collins’ testimony regarding abuse was relevant to her credibility. Nor did the district court violate the hearsay rule in allowing Officer Dreher to testify that Mrs. Collins made allegations of physical abuse to him. His testimony was likewise admissible to address attacks on her credibility.
 
 See
 
 NRS 51.035 (hearsay means a statement offered to prove the truth of the matter asserted).
 
 [1]
 
 We also hold that the district court did not abuse its discretion in determining that the probative value outweighed the prejudicial effect of the physical abuse evidence.
 
 See
 
 Daly v. State, 99 Nev. 564, 567, 665 P.2d 798, 801 (1983).
 

 Mr. Collins argues that the convictions should be reversed because the district court admitted statements that Mr. Collins made to Mrs. Collins’ former attorney, Annabelle Hall, in viola
 
 *1184
 
 tion of the attorney-client privilege. The privilege does not protect such statements because there is no evidence that Mr. Collins was either speaking to Hall as Mrs. Collins’ representative, or engaged in a joint defense with Mrs. Collins.
 
 See
 
 NRS 49.095; NRS 49.075; Naum v. State, 630 P.2d 785, 788 (Okla. Ct. App. 1981) (holding that there must be evidence the representative is empowered to act for the client upon any advice rendered by counsel); United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989),
 
 cert. denied,
 
 502 U.S. 810 (1991); Eisenberg v. Gagnon, 766 F.2d 770, 787 (3d Cir. 1985) (protecting only communications made in the course of an on-going and joint effort to set up a common defense strategy).
 

 Mr. Collins also claims that his statements to Hall should have been suppressed because Hall violated S.C.R. 182 when she spoke to Mr. Collins without first obtaining his attorney’s consent. Because there is no evidence that Hall spoke to Mr. Collins about the subject of
 
 his
 
 representation (he initiated the contact and tried to influence Ms. Hall’s defense of
 
 Mrs. Collins),
 
 we hold that Hall did not violate S.C.R. 182.
 

 Mr. Collins argues that the case should be reversed because the district court improperly restricted the subject-matter of voir dire. Because Collins failed to object to the limitation at trial, we decline to address this issue.
 
 See
 
 McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983).
 

 Next, Mr. Collins asserts that Officers Eyhardle and Blakeslee improperly gave expert opinions. Neither officer was offered to the court as an expert nor treated as such during examination. Thus, we hold that the witnesses were not testifying as experts. Because the officers’ opinions were rationally based on what they saw in the home and helpful to determine whether the house was actually burglarized, the testimony was admissible under NRS 50.265.
 

 Mr. Collins also argues that certain figurines were improperly admitted because they were not produced until five years after the alleged burglary, thus causing chain of custody problems. Because there was no evidence indicating that the figurines were not in “substantially the same condition as when the crime was committed,” we hold that they were properly admitted.
 
 See
 
 United States v. Dickerson, 873 F.2d 1181, 1185 (9th Cir. 1988).
 

 Mr. Collins contends that the district court erred in admitting certain portions of Mrs. Collins’ testimony because it referenced marital communications. We disagree. All of the testimony at
 
 *1185
 
 issue described actions and observations rather than marital communications.
 
 See
 
 NRS 49.295(1)(b);
 
 see also
 
 Petition of Fuller, 63 Nev. 26, 37, 159 P.2d 579, 584 (1945) (holding the fact that transactions took place during marriage is insufficient to show that knowledge of them was derived from communications made by one’s spouse).
 

 Finally, Mr. Collins argues that his conviction for obtaining money by false pretenses should be overturned because it is incompatible with his convictions for insurance fraud under NRS 686A.291. We hold that the convictions are compatible and that there is sufficient evidence in the record to support each conviction.
 

 We have thoroughly reviewed all other arguments on appeal and conclude that they are meritless. Accordingly, we affirm both district court judgments.
 

 [1]
 

 Even if Officer Dreher’s testimony can be considered inadmissible hearsay, any error in its admittance at trial was harmless because Mrs. Collins testified to the same account.