OPINION
 

 Per Curiam:
 

 On July 29, 1997, appellants, John Roy Garrettson and Donna
 
 *1066
 
 Kathleen Garrettson (collectively, the Garrettsons), each pleaded guilty to one count of conspiracy to violate the Uniform Controlled Substances Act, but preserved their right to appeal the denial of their motion to suppress evidence. On appeal, the Garrettsons contend that Justice of the Peace Jim EnEarl (Judge EnEarl) erred in denying them an evidentiary hearing to determine whether the state’s thermal imaging technician was a qualified expert and in denying their motion to suppress evidence. In addition, the Garrettsons contend that the search warrant authorizing the search of their home was fatally defective because: 1) the informant’s information was stale; 2) the search warrant was overbroad and not supported by probable cause; and 3) Judge EnEarl failed to act neutrally and detached in issuing the warrant. For the reasons set forth below, we conclude that the Garrettsons’ contentions lack merit.
 

 FACTS
 

 In June 1996, Linda Davis (Davis) informed narcotics agents that marijuana was being grown by John “Garrison” at his residence in Gardnerville, Nevada. Davis described “Garrison’s” mobile home, his vehicles, and a unique storage locker on the premises made from a U-Haul truck box.
 

 Based on the information Davis provided, a narcotics agent drove by 2251 Edwards Road, Gardnerville, Nevada, and verified the presence of the mobile home, the vehicles, and the U-Haul storage shed that Davis had described. The U-Haul shed had a turbine vent and what appeared to be a water line running through it. The agent determined that the vehicles were registered to John Roy Garrettson and that power company records showed that power to 2251 Edwards Road was in the name of John R. Garrettson.
 

 On July 30, 1996, narcotics agent Brian McGuckin (McGuckin), who was trained in thermal imagery by the Drug Enforcement Administration (DEA), conducted a thermal imaging surveillance on the Garrettsons’ residence and shed. The residence measured cool except for one hot vent.
 
 [1]
 
 Additionally, the roof of the shed and the roof fan measured hot.
 

 On August 15, 1996, narcotics agent Rory C. Planeta (Planeta) received copies of the power consumption records for a sixteen-month period for 2251 Edwards Road. A majority of the Garrettsons’ power bills were more than $100.00. The next day McGuckin conducted another thermal imaging test on the Garrettsons’ shed. The vents on the front of the shed tested hot
 
 *1067
 
 but the turbine roof vent of the shed tested cool. Agent Planeta concluded that a harvesting of marijuana plants would explain the diminished generation of heat from the earlier imaging results.
 

 On August 21, 1996, Judge EnEarl issued a search warrant for the Garrettsons’ shed and home. Two days later, on August 23, 1996, agents served the warrant and found incriminating evidence including, but not limited to, thirty-seven growing marijuana plants, cultivation equipment, a triple beam scale, plastic baggies, marijuana pipes, and a rolling machine. Based on this evidence, the Garrettsons were arrested and charged with manufacturing a controlled substance and possession of a controlled substance for sale.
 

 The Garrettsons filed a motion to quash the search warrant and to suppress evidence obtained pursuant to the August 23, 1996 search. Judge EnEarl denied the motion to suppress, finding that based on the totality of the circumstances there was probable cause to issue the warrant since Davis’s tip that John Garrettson was growing marijuana was corroborated by the investigating officers’ observations of the vented U-Haul shed, the higher than normal power bills, and the thermal imaging scans that measured “hot.”
 

 After a preliminary hearing held on February 13, 1997, the Garrettsons were bound over for trial. They pleaded not guilty in district court. The Garrettsons filed another motion to suppress on July 2, 1997, but failed to request an evidentiary hearing. During oral argument on the motion to suppress, set sua sponte by the court, the Garrettsons’ counsel indicated that he intended to offer expert testimony to show that McGuckin was not a qualified expert in thermal imaging. The court disallowed the testimony because counsel neither requested an evidentiary hearing, nor presented enough information to justify one. However, the court gave counsel the opportunity to submit an affidavit of the expert witness’s proposed testimony, but this affidavit was never filed.
 

 The district court then denied the Garrettsons’ motion to suppress. On July 29, 1997, the Garrettsons each pleaded guilty but preserved their right to appeal Judge EnEarl’s refusal to grant an evidentiary hearing and denial of their motion to suppress. The Garrettsons were each sentenced to probation not to exceed one year.
 

 DISCUSSION
 

 I.
 
 The district court properly denied the Garrettsons an eviden-tiary hearing
 

 The Garrettsons contend that the district court erred in denying them an evidentiary hearing to determine whether or not
 
 *1068
 
 McGuckin was a “certified” thermal imaging technician. We disagree. Ninth Judicial District Court Rule (NJDCR) 6(e) states that decisions on all motions will be rendered without oral argument unless oral argument is requested by the court or the parties. Moreover, District Court Rule 13(1) requires that all motions include a notice of the motion setting the matter on the court law and motion calendar. The Garrettsons neither requested oral argument, pursuant to NJDCR 6(e), nor set the matter on the court calendar. Accordingly, the district court did not err in denying the Garrettsons an evidentiary hearing because of their failure to comply with applicable procedural rules.
 

 Additionally, a defendant is not entitled to an evidentiary hearing to examine the validity of a search warrant unless he or she can make a preliminary showing and an offer of proof that there were intentional or reckless material falsehoods in the affidavit. Franks v. Delaware, 438 U.S. 154, 155 (1970).
 

 In the instant case, the Garrettsons failed to make a preliminary showing substantiating their claim that in issuing the warrant, Judge EnEarl was misled by the alleged material falsehood in the affidavit concerning McGuckin’s expert qualifications in thermal imaging. Although the Garrettsons’ counsel indicated that he intended to offer expert testimony to prove that McGuckin was not a qualified thermal imaging expert, no further showing was ever provided to the court. Moreover, the Garrettsons never provided the court with a satisfactory explanation of their failure to furnish an affidavit or other offer of proof. Accordingly, the district court properly denied the Garrettsons an evidentiary hearing because they failed to make a preliminary showing of reckless or intentional falsehoods, as mandated by
 
 Franks.
 

 [2]
 

 II.
 
 The district court properly denied the Garrettsons’ motion to suppress because the search warrant was supported by probable cause
 

 The Garrettsons also contend that the search warrant was issued without probable cause because Davis’s tip was stale and the thermal imaging technology was unreliable. We disagree.
 

 This court will not overturn a magistrate’s finding of probable
 
 *1069
 
 cause for a search warrant unless the evidence in its entirety provides no substantial basis for the magistrate’s finding. Wright v. State, 112 Nev. 391, 396, 916 P.2d 146, 150 (1996),
 
 overruled on other grounds by
 
 Levingston v. Washoe County, 114 Nev. 306, 956 P.2d 84 (1998); Keesee v. State, 110 Nev. 997, 1002, 879 P.2d 63, 67 (1994). In the instant case, there was a substantial basis for Judge EnEarl’s finding of probable cause.
 

 First, we conclude that the Garrettsons’ contention that Davis’s tip was stale because approximately three months had lapsed between the tip and the issuance of the search warrant lacks merit. ‘ ‘Information is stale and probable cause does not exist when it is no longer reasonable to presume that a search will turn up evidence of a crime.”
 
 Wright,
 
 112 Nev. at 396, 916 P.2d at 149. We have held that in the context of an ongoing illicit operation such as the cultivation of marijuana, rather than a drug transaction, which is transitory in nature, the passage of time is less significant in determining whether information is stale.
 
 Id.
 
 at 396, 916 P.2d at 150. Accordingly, the approximate three-month lapse in time between Davis’s tip and the issuance of the search warrant did not render the tip stale because the Garrettsons’ marijuana cultivation was ongoing and continuous in nature.
 

 Second, the Garrettsons contend that the use of thermal imaging technology is inherently unreliable because it cannot distinguish natural heat from heat emanating from a marijuana growing operation.
 
 [3]
 
 We disagree. Increasingly, law enforcement personnel are using thermal imaging to detect marijuana growing operations.
 
 See Siegal,
 
 934 P.2d at 181 (providing an in depth discussion of thermal imaging). Additionally, it is generally known that high intensity lights that generate excess heat emissions are used to grow marijuana indoors.
 
 See id.
 
 at 180. Thermal imaging measures these excess heat emissions and records them on videotape.
 
 See id.
 
 Therefore, when thermal imaging is performed by a qualified expert, as Judge EnEarl found in this case, thermal imaging may be a reliable indicator of marijuana cultivation.
 

 Alternatively, the Garrettsons contend that the search warrant was overbroad because even if there was probable cause to search the shed, there was no probable cause to search the Garrettsons’ residence. We disagree.
 

 
 *1070
 
 The record shows that there was probable cause to search the shed.
 
 [4]
 
 We have held that when there is probable cause to search a shed, a warrant may properly authorize a search of the residence as well provided the defendant controls the entire premises. Wright v. State, 112 Nev. 391, 397, 916 P.2d 146, 150 (1996) (citing
 
 Keesee,
 
 110 Nev. at 1004-05, 879 P.2d at 68) (“warrant may authorize search of entire street address when police have probable cause to search only part of the premises if defendant controls the entire premises”). Clearly, the Garrettsons controlled the residence that they resided in. Accordingly, we conclude that the search warrant was not overbroad because the Garrettsons controlled the entire premises.
 

 Finally, the Garrettsons contend that Judge EnEarl abandoned his judicial role by relying on McGuckin’s expert opinion of the results of the thermal imaging scan. We disagree. Judge EnEarl considered McGuckin’s expert opinion about the thermal imaging results only after the state submitted evidence of McGuckin’s qualifications, including a certificate indicating that McGuckin had been trained in thermal imaging by the DEA. Moreover, Judge EnEarl did not rely solely on the thermal imaging evidence; rather, in finding probable cause for the issuance of the warrant, he considered the totality of the circumstances, as mandated by
 
 Gates
 
 and
 
 Keesee.
 
 Accordingly, Judge EnEarl acted properly and did not abandon his judicial role.
 

 CONCLUSION
 

 We conclude that Judge EnEarl properly denied the Garrettsons an evidentiary hearing. Moreover, the search warrant issued to search the Garrettsons’ premises was supported by probable cause and not overbroad. Finally, we conclude Judge EnEarl did not abandon his judicial role in making this determination.
 

 Based on the foregoing, we affirm the Garrettsons’ convictions.
 

 [1]
 

 In thermal imaging, testing hot may be an indication of marijuana cultivation.
 
 See
 
 State v. Siegal, 934 P.2d 176, 181 (Mont. 1997).
 

 [2]
 

 The Garrettsons contend that the analysis set forth in
 
 Franks
 
 is inapplicable to their case because their attack'on McGuckin’s qualifications was based on the sufficiency of the warrant rather than the veracity of the affiant. However, the Garrettsons’ contention contradicts their position taken in the district court, and this court has consistently held that a party cannot adopt a theory different from that taken at the hearing below.
 
 See
 
 McCall v. State, 97 Nev. 514, 516, 634 P.2d 1210, 1212 (1981); Force v. Peccole, 77 Nev. 143, 151, 360 P.2d 362, 366 (1961). Accordingly, we conclude that the Garrettsons’ contention lacks merit.
 

 [3]
 

 The Garrettsons did not brief the issue of whether thermal imaging is a “search” under the Fourth Amendment of the United States Constitution. Therefore, we do not, and need not, address the issue of the constitutionality of thermal imaging surveillance.
 

 [4]
 

 “When the issuance of a warrant is based upon information obtained from a confidential informant, the proper standard for determining probable cause for the issuance of the warrant is whether under the totality of the circumstances, there is probable cause to believe that contraband or evidence is located in a particular place.” Keesee v. State, 110 Nev. 997, 1002, 879 P.2d 63, 67 (1994) (citing Illinois v. Gates, 462 U.S. 213 (1983)). In applying the totality of the circumstances test adopted in
 
 Gates
 
 and
 
 Keesee,
 
 Judge EnEarl found that there was probable cause to search the Garrettsons’ premises because of Davis’s tip that John was growing marijuana on the premises corroborated by the narcotics agent’s observations of the vented shed, the Garrettsons’ high power bills, and the thermal imaging scan of the house and the shed that measured “hot.”