IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
STEPHANITA KARLA GALLEGOS,
Respondent.

No. 78401

FILED

FEB 21 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order granting respondent's motion to suppress. Fourth Judicial District Court, Elko County; Nancy L. Porter, Judge.

A security officer at a casino in Elko County witnessed respondent Stephanita Karla Gallegos exchanging some pills with another woman on a surveillance video. When the police arrived, they escorted her into the security office and began questioning her. One of the officers asked her whether she had any illegal drugs in her purse and she admitted that she did. After discovering that there was an outstanding warrant for Gallegos's arrest, the officer arrested and handcuffed her. The officer then searched her purse and found drugs. The officer informed Gallegos of her *Miranda* rights, which she waived. Gallegos continued to answer the officer's questions and admitted again that the drugs in her purse belonged to her. The State charged Gallegos with trafficking and possession of a controlled substance. She moved to suppress the evidence, arguing that the search of her purse was beyond the scope of a permissible search incident to arrest. She also sought to suppress her pre-*Miranda* statements, arguing that the officers conducted an unlawful custodial interrogation, and her

SUPREME COURT
OF
NEVADA

(O) 1947A

20-07111

post-*Miranda* statements, arguing that the mid-interrogation warning was ineffective. The district court granted the motion.

The State first challenges the district court's conclusion that because there was no conceivable way Gallegos could have reached inside her purse to retrieve a weapon or destroy evidence, the search of Gallegos's purse was not a lawful search incident to arrest. The State focuses on the district court's conclusion concerning the constitutionality of the search and not its factual findings, thus we review the decision de novo. *See State v. Lloyd*, 129 Nev. 739, 743, 312 P.3d 467, 469 (2013) (explaining that on appeal from an order granting a motion to suppress, "[a] district court's legal conclusion regarding the constitutionality of a challenged search receives de novo review").

"[T]he authority to search incident to arrest derives from the need to disarm and prevent any evidence from being concealed or destroyed." *State v. Greenwald*, 109 Nev. 808, 810, 858 P.2d 36, 37 (1993). This authority extends to the search of the arrestee's person and the area in the arrestee's immediate control. *Thurlow v. State*, 81 Nev. 510, 513, 406 P.2d 918, 920 (1965). Here, however, the search occurred after the officers had securely restrained Gallegos and the purse was no longer within her immediate control. Gallegos was in handcuffs and multiple police and security officers were present—one of whom had previously restricted her access to her purse. Gallegos did not try to flee and was not violent. In fact, she was fully compliant. Thus, at the time of the search, Gallegos did not pose a threat to officer safety. Nor was there an immediate need to preserve evidence because her purse was not within her immediate reach. Accordingly, the district court did not err when it concluded that the search of Gallegos's purse was not a lawful search incident to arrest. *See Rice v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

2

*State*, 113 Nev. 425, 430, 936 P.2d 319, 322 (1997) (relying on the fact "that Rice was placed in the patrol car before [the officer] searched the backpack" as dispositive); *see also Greenwald*, 109 Nev. at 810, 858 P.2d at 37 (concluding that the search was unlawful because "[w]ith Greenwald safely locked away in a police car, there was no conceivable 'need' to disarm him or prevent him from concealing or destroying evidence").[1]

Next, the State challenges the district court's conclusion that the officers conducted a custodial interrogation and its suppression of Gallegos's pre-*Miranda* statements. A suspect is in "[c]ustody for *Miranda* purposes" if "a reasonable person in the suspect's position would [not] feel at liberty to terminate the interrogation and leave." *Rosky v. State*, 121 Nev. 184, 191, 111 P.3d 690, 695 (2005) (internal quotation marks omitted). Four factors are relevant to our determination: "(1) the site of the interrogation, (2) whether the investigation has focused on the subject, (3) whether the objective indicia of arrest are present, and (4) the length and form of questioning." *Id.* at 192, 111 P.3d at 695 (internal quotation marks omitted). Because a district court's custody determination presents a mixed question of law and fact, we review the determination de novo. *Id.* at 190, 111 P.3d at 694.

Here, we conclude that the district court properly determined that Gallegos was in custody for purposes of *Miranda* because a reasonable

---

[1]Although the State urges this court to overturn *Rice* and instead adopt a "time of arrest" rule, it has not provided a compelling reason for doing so and we perceive none. *See Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) (explaining that under the doctrine of stare decisis, principles of law already examined and decided by this court "hold positions of permanence in this court's jurisprudence" and will not be overturned absent a compelling reason).

person in her situation would not feel free to leave. When the officers arrived at the casino, one of them informed Gallegos that he needed to speak with her. When she asked why, he responded, "Because I said so." The officers then removed Gallegos from the public area of the casino and took her into a small security room with one door, which remained closed. *See Carroll v. State*, 132 Nev. 269, 282, 371 P.3d 1023, 1032 (2016) (finding the fact "that the interrogation room was small and had only one door" relevant to its in-custody determination). The officer leading the interrogation told her that she was being detained and did not give her the option of leaving. He told her to sit down and restricted her access to her belongings, including her cell phone. *See id.* at 284, 371 P.3d at 1033 (finding the fact that the officers did not allow the suspect to move and told him to "sit tight" relevant to its determination that the suspect could not move around freely). Furthermore, Gallegos was outnumbered four-to-one, with two officers interrogating her throughout her detention. *See id.* at 284, 371 P.3d at 1034 (finding the fact that two detectives interrogated the suspect relevant to its determination that the atmosphere was police-dominated). Although some facts suggest Gallegos was not in custody, the totality of the circumstances indicate that she was. *See Avery v. State*, 122 Nev. 278, 286, 129 P.3d 664, 670 (2006) ("We consider the totality of the circumstances in deciding whether [a defendant] was in custody; no single factor is dispositive."). We therefore conclude that the district court did not err when it suppressed Gallegos's pre-*Miranda* statements.

Finally, the State challenges the district court's conclusion that the mid-interrogation *Miranda* warning was ineffective thereby warranting suppression of Gallegos's post-*Miranda* statements. "The threshold issue when interrogators question first and warn later is . . . whether it would be

SUPREME COURT
OF
NEVADA

(O) 1947A

reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires." *Missouri v. Seibert*, 542 U.S. 600, 611-12 (2004); *Carroll*, 132 Nev. at 286, 371 P.3d at 1035 (adopting the *Seibert* test). In reviewing the effectiveness of a mid-interrogation *Miranda* warning, we consider whether the form of questioning was singular and continuous, the completeness and detail of the pre-*Miranda* statements in relation to the post-*Miranda* statements, the presence of deception, and whether the officer informed the suspect that the pre-*Miranda* statement was inadmissible. *Carroll*, 132 Nev. at 286, 371 P.3d at 1035. Here, the interrogation was singular and continuous, Gallegos's pre-*Miranda* statements were substantially similar to her post-*Miranda* statements, and the officers never informed Gallegos that her pre-*Miranda* statements were inadmissible. Based on these facts, we conclude that the district court properly determined that a reasonable person in Gallegos's position would have felt compelled to talk, thereby rendering the mid-interrogation *Miranda* warning ineffective. *See Seibert*, 542 U.S. at 613 (explaining that "telling a suspect that 'anything you say can and will be used against you,' without expressly excepting the statement just given, could lead to an entirely reasonable inference that what he has just said will be used, with subsequent silence being of no avail"); *Carroll*, 132 Nev. at 286, 371 P.3d at 1035 (concluding that because "Carroll's post-warning statements were simply a repetition of his pre-warning statements," the mid-interrogation *Miranda* warning was ineffective).[2]

---

[2]To the extent that this disposition does not specifically address additional arguments that the State raises, we have determined that those arguments do not warrant reversal.

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

cc:  Hon. Nancy L. Porter, District Judge
     Attorney General/Carson City
     Elko County District Attorney
     Elko County Public Defender
     Elko County Clerk