OPINION
By the Court,
Springer, J.:
The State appeals from the district court’s granting of a motion *809 to suppress illegally obtained evidence. The district court properly concluded that a violation of the Fourth Amendment could be found under the circumstances of this case.
Motorcyclist Stephen E. Greenwald, in the company of other motorcyclists, was seen by a state trooper to pass another vehicle in a no-passing zone. The trooper followed Greenwald and observed further traffic law violations, prompting the officer to activate his siren and pull Greenwald over to the side of the road. The trooper advised Greenwald that he “needed to be arrested” and proceeded to handcuff Greenwald and placed him under arrest for reckless driving. The officer then searched Greenwald and, in the process, took Greenwald’s wallet from his person and placed it on the ground. After doing this, the trooper locked Greenwald in a police vehicle. With Greenwald secured in the back seat of the police vehicle, the trooper returned to the place where the wallet lay, searched through its contents and counted the money contained in the wallet. Then the trooper proceeded to search the motorcycle. The trooper made a very careful and thorough inspection of the motorcycle, beginning at the front and going toward the rear until he had completed an exacting search of the entire vehicle.
It is hard to escape the conclusion that the trooper was searching for contraband when he went about examining the contents of the gas and oil tanks and even dismantling a flashlight, searching for the kinds of items the trooper thought might be secreted in a flashlight cylinder. The trooper searched the pockets of all clothing found on the motorcycle and made a complete internal inspection of the buckled saddlebags affixed to the motorcycle. The saddlebag search resulted in the trooper’s finding of a firearm, a holster, an empty cartridge clip, and several “hits” of LSD. The trooper then prepared an inventory which included the firearm,[1] the holster, the cartridge clip, and the contraband LSD. These items were the only property listed on the trooper’s inventory sheets. Although the trooper listed on his “Vehicle Report” (and not on the form entitled “Inventory/Receipt for Property”) some other items of personal property (a jacket, goggles, helmet, gloves and a radar detector), he did not list or inventory on either form most of the items of personal property found during the search.
Quite obviously the officer in this case was not making a search incident to Greenwald’s arrest, as the search was made some time after the arrest and at a time that Greenwald was well secured in a police vehicle. As the State points out in its opening brief, citing *810 Chimel v. California, 395 U.S. 752 (1969), the authority to search incident to arrest derives from the need to disarm and prevent any evidence from being concealed or destroyed. With Greenwald safely locked away in a police car, there was no conceivable “need” to disarm him or prevent him from concealing or destroying evidence; so we leave this point.
The State claims in its opening brief, page 6, that “[t]he search of the motorcycle was [also justified as] a valid inventory search conducted pursuant to Florida v. Wells, [495 U.S. 1] (1990).” The State quotes pertinent language in the Wells case which tells us that “an inventory search must not be a ruse for general rummaging in order to discover incriminating evidence.” Wells, 495 U.S. at 4. Wells counsels further that the “policy or practice governing inventory searches should be designed to produce an inventory. The individual officer must not be allowed so much latitude that inventory searches are turned into ‘a purposeful and general means of discovering evidence of [a] crime.’” Id. at 4 (quoting Colorado v. Bertine, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring)). We agree.
After an evidentiary hearing, the district court made factual determinations adverse to the State’s position in this case. Its findings are amply supported by the evidence. We have a search in which the officer did not even pretend to prepare a complete inventory of all of the items that were the product of his extensive search of the motorcycle.[2] The contraband here was found only after a most intense and minute search of virtually every square inch of Greenwald’s motorcycle and was found hidden in a zippered toiletry case in a black leather saddlebag closed securely with two buckles. It is rather obvious that the officer was not doing what he was doing just for the sake of taking inventory of Greenwald’s “valuables.” If he had not been searching for contraband, the officer would in all probability simply have inventoried “one zippered toiletry bag” and let it go at that. He would not, and did not, make a detailed inventory list of the toiletry *811 items within the zippered bag, by making a list of such things as “one toothbrush,” “five razor blades,” and the like. In fact, the officer testified that when he does take inventory, he does not “write down the clothing or toiletry articles.” If he was not going to inventory these articles (and he did not), why, one wonders, did he unzip the toiletry bag and search its contents? The answer appears to have been apparent to the district court judge in this case, who was justified in concluding that the officer was making an unwarranted search under the guise and “ruse” of an inventory search. See Wells, 495 U.S. at 4.
Perhaps the most supportive fact in justification of the district court’s decision to suppress evidence produced by this search was the trooper’s failure to produce an “inventory.” As put by the Supreme Court in Wells, logically enough, “the policy or practice governing inventory searches should be designed to produce an inventory.” Id. at 4 (emphasis added). Without an inventory, we can have no inventory search.
After reviewing the district court record, we agree with the judgment of the district court and conclude that the search was violative of the Fourth Amendment of the United States Consitution and of the Nevada Constitution, article I, section 18. The order of the district court is therefore affirmed.[3]
Young and Shearing, JJ., concur.

As far as we can tell from this record, there is no contention on the part of the State that the firearm was contraband or otherwise illegally possessed.

We have no quarrel with the dissent’s saying that the court is not bound by the arresting officer’s characterization of the search as incident to arrest or as an inventory. If the officer had clearly been engaged in a search incident to arrest, no one would argue that his calling it an inventory search would, in itself, invalidate the search. The fact that the officer told the trial court that he was looking in the gas tank and in “every nook and cranny” of the motorcycle does have some bearing on the nature of the search. The trial judge concluded, on the basis of all the evidence before him, that the search was invalid under either guise. The dissent does not reveal how the trial judge erred in coming to this conclusion.

Counsel in this case, David Houston, did not in the text of his Answering Brief (which he miscalls a “Reply Brief’) give us one citation to the Record on Appeal. He did, however, in a footnote, state, “All citations shall be to the record on appeal and shall be denominated ‘ROA [Page Number]’.” There are many references to the record and many quotations from the record in Mr. Houston’s brief; yet not once does he refer us to the volume and page number of the Record on Appeal. Mr. Houston only makes reference to “Ph [page]” and “DM [page]” in four footnotes, and this type of reference is an incorrect format for reference to the Record on Appeal. NRAP 28(e). If Mr. Houston presents us with another brief of this quality, we will reject his brief and consider imposing sanctions. NRAP 28(a)(3) & (e).