136 Nev., Advance Opinion 48

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
KIMBERLY MARIE NYE,
Respondent.

No. 78230

**FILED**

JUL 30 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order granting respondent's motion to suppress. Fourth Judicial District Court, Elko County; Alvin R. Kacin, Judge.

*Affirmed.*

Aaron D. Ford, Attorney General, Carson City; Tyler J. Ingram, District Attorney, and Daniel M. Roche and Chad B. Thompson, Deputy District Attorneys, Elko County,
for Appellant.

David D. Loreman, Chtd., and David D. Loreman, Elko,
for Respondent.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

The State appeals from the district court's grant of respondent Kimberly Marie Nye's motion to suppress drugs and drug paraphernalia police discovered while searching her backpack. The search occurred after officers arrested Nye, placed her inside a patrol car, placed her backpack in

the trunk of the patrol car, and transported her to jail. The State argues that the district court erred by suppressing the evidence, maintaining that the contraband was recovered in a lawful search incident to arrest, or otherwise would have been inevitably discovered in a lawful inventory of the backpack's contents. We disagree.

We conclude the district court properly determined that the search of Nye's backpack was beyond the scope of a permissible search incident to arrest. We further conclude that the evidence would not have been discovered through a lawful inventory search, as the booking deputy failed to generate an actual inventory of the backpack's contents, and therefore the evidence was not admissible under the inevitable-discovery doctrine. Accordingly, we affirm the district court's order granting Nye's suppression motion.

## FACTS

The State arrested Nye after she refused to leave a casino in Elko County. Officers put her inside a patrol car and put her backpack, which was with her at the time of the arrest, in the trunk. When they arrived at the jail, an officer searched her backpack and found drugs. Shortly thereafter, a jail booking deputy conducted an inventory search of Nye's backpack. Among other items, the booking deputy listed "bag" on the inventory sheet and did not produce an itemized inventory of the contents in the backpack. The State charged Nye with possession of a controlled substance. She moved to suppress the evidence, arguing that the search of her backpack was beyond the scope of a permissible search incident to arrest and that the inevitable-discovery rule did not apply because the State failed to show that the evidence ultimately would have been discovered in a valid inventory search. The State opposed, but the district court granted the motion.

*DISCUSSION*

*Search incident to arrest*

The State first challenges the district court's conclusion that the search of Nye's backpack was not a lawful search incident to arrest because Nye was safely under control when the officers searched her backpack. Because the State focuses on the district court's conclusion concerning the constitutionality of the search and not its factual findings, we review this challenge de novo. *See State v. Lloyd*, 129 Nev. 739, 743, 312 P.3d 467, 469 (2013) (explaining that on appeal from an order granting a motion to suppress, "[a] district court's legal conclusion regarding the constitutionality of a challenged search receives de novo review").

"[T]he authority to search incident to arrest derives from the need to disarm and prevent any evidence from being concealed or destroyed." *State v. Greenwald*, 109 Nev. 808, 810, 858 P.2d 36, 37 (1993). Here, the search occurred after officers arrested Nye, secured her inside a patrol car, put her backpack in the trunk, and took her to jail. Thus, at the time of the search, Nye did not pose a threat to officer safety. Nor was there an immediate need to preserve evidence because she had been and remained separated from her backpack. Accordingly, the district court did not err when it concluded that the search of Nye's backpack was not a lawful search incident to arrest. *See Rice v. State*, 113 Nev. 425, 430, 936 P.2d 319, 322 (1997) (relying on the fact "that Rice was placed in the patrol car before [the officer] searched the backpack" as dispositive in finding the search unlawful); *Greenwald*, 109 Nev. at 810, 858 P.2d at 37 (concluding that the search was unlawful because, "[w]ith Greenwald safely locked away in a

 

police car, there was no conceivable 'need' to disarm him or prevent him from concealing or destroying evidence").[1]

*Inventory search*

Next, the State challenges the district court's conclusion that the inventory search was invalid and its refusal to apply the inevitable-discovery doctrine. Under the inevitable-discovery doctrine, evidence will not be suppressed based on improper police conduct if the prosecution can prove by a preponderance of the evidence that it ultimately would have been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984); *Proferes v. State*, 116 Nev. 1136, 1141, 13 P.3d 955, 958 (2000) (adopting this doctrine), *overruled on other grounds by Rosky v. State*, 121 Nev. 184, 111 P.3d 690 (2005). An inventory search, if valid, can constitute a lawful means of discovery. *See Weintraub v. State*, 110 Nev. 287, 288, 871 P.2d 339, 340 (1994) (explaining that an inventory search is a well-established exception to the Fourth Amendment's probable cause and warrant requirements). To be valid, however, the officers conducting the search must produce "a true inventory of" personal items found during the search. *Id.* at 289, 871 P.2d at 340.

Here, the district court found that the police department's policy requires the booking deputy to routinely search the contents of containers for contraband, and that the booking deputy adhered to this

---

[1]Although the State urges us to overturn *Rice* and instead adopt a "time of arrest" rule for evaluating the propriety of a search incident to arrest, we see no compelling reason to do so. *See Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) (explaining that under the doctrine of stare decisis, principles of law already examined and decided by this court "hold positions of permanence in this court's jurisprudence" and will not be overturned absent a compelling reason).

protocol when searching Nye's backpack. However, the district court further found that the inventory search was invalid because the booking deputy merely listed "bag" on the inventory sheet and did not otherwise produce a written inventory detailing the contents of the backpack. For this reason, the district court determined that the booking deputy would not have discovered the contraband through *lawful* means. We agree.

Fundamentally, both the United States and Nevada Constitutions require an inventory search to yield an actual inventory. *See Florida v. Wells*, 495 U.S. 1, 4 (1990) ("The policy or practice governing inventory searches should be designed to produce an *inventory*." (emphasis added)); *Greenwald*, 109 Nev. at 811, 858 P.2d at 38 ("Without an inventory, we can have no inventory search."). Beyond this bedrock principle, we afford police departments considerable deference to craft and implement policies that best serve the purposes of an inventory search within their station houses. *See Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) ("We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the station house."). Before we will defer to a police department's policy, however, the prosecution must first establish that the inventory search was actually conducted pursuant to the operative policy. *See South Dakota v. Opperman*, 428 U.S. 364, 372 (1976) ("The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that *inventories pursuant to standard police procedures* are reasonable." (emphasis added)).

Here, the booking deputy did not produce an inventory detailing the contents of Nye's backpack, and the State does not contend that the confiscated drugs and drug paraphernalia constituted the only contents in

Nye's backpack, such that the entry of "bag" on the inventory list accurately reflected Nye's belongings.[2] Instead, the booking deputy testified that while she does not recall conducting this search, she explained that if there are *too many items* in a container, like Nye's backpack, then the department's general practice is to list the bulk item as "bag" without inventorying its individual contents. The arresting officer also testified that he could not recall *all* the items present in Nye's backpack when he discovered the drugs and drug paraphernalia therein. Because we infer from this testimony that the backpack held more than the confiscated contraband, and because the booking deputy failed to generate an inventory of the backpack wherein the contraband was discovered, we conclude that the proffered inventory list "cannot be fairly and accurately described as a true inventory of [Nye's] personal property." *Weintraub*, 110 Nev. at 289, 871 P.2d at 340 (invalidating a similarly vague inventory following the search of a vehicle); *see also Greenwald*, 109 Nev. at 811, 858 P.2d at 38 ("If [the police officer] was not going to inventory these articles [found in the bag] (and he did not), why, one wonders, did he unzip the toiletry bag and search its contents?").

Furthermore, the State's reliance on the mere existence of the department's policy, without putting forth evidence demonstrating the validity of *this* search pursuant to said policy, compels us to conclude that the State failed to establish that the booking deputy adhered to the

---

[2]The booking deputy testified that if she *does* find contraband, she does not list it on the inventory because illegal items are not returned to the arrestee upon release. Thus, if the booking deputy had discovered the contraband, the failure to list it on the inventory sheet would not have rendered the search invalid.

department's policy during the search of Nye's backpack.[3] *See Lafayette*, 462 U.S. at 647 (explaining that while "it is not our function to write a manual on administering routine, neutral procedures of the station house[,]" we nevertheless must "assure against violations of the Constitution"). Despite department policy requiring the booking deputy to conduct the inventory search in camera view, the State failed to introduce any video evidence depicting the booking deputy's inspection of the backpack. The record is likewise devoid of any testimonial evidence describing this search. In addition, Nye did not sign the inventory receipt for the property stored, as required by the department's policy, and the State failed to address this omission. Because we determine the State failed to show that the booking deputy conducted the search pursuant to standard procedure, it also cannot be said that the booking deputy's search of Nye's

---

[3]The dissent interprets this conclusion as imposing a separate requirement—that an officer must conform to official procedure in order to establish the validity of an inventory search. We disagree with this characterization. Here, the State *solely* relied on the existence of an official procedure to show the validity of the inventory search but failed to put forth *any* evidence demonstrating that the booking deputy followed the department's policy when searching Nye's backpack. For this reason, we cannot defer to the existence of a policy alone to conclude that the search here was reasonable. *See South Dakota v. Opperman*, 428 U.S. 364, 372 (1976) (explaining "that inventories pursuant to standard police procedures are reasonable").

Moreover, this conclusion is entirely consistent with the dissent's point that an inventory search need not conform to official procedure to be valid, so long as the State can otherwise prove that the search was reasonable. *See Camacho v. State*, 119 Nev. 395, 402, 75 P.3d 370, 375 (2003). But the State never sought to validate the reasonableness of the search. Regrettably, both the State and the dissent lose sight of who bears the burden to salvage the evidence found during an unlawful search when there is a failure to comply with department policy.

backpack adequately served the purpose of an inventory search. *See Weintraub*, 110 Nev. at 289, 871 P.2d at 340 (explaining that the purpose of an inventory search is to protect personal property, insulate officers from charges of theft, and expose any possible danger).

For these reasons, we hold that the search incident to arrest was invalid, and that the State failed to prove by a preponderance of the evidence that but for the officer's unlawful search, the contraband would have been inevitably discovered through a *lawful* inventory search. *See Camacho v. State*, 119 Nev. 395, 402, 75 P.3d 370, 375 (2003) (explaining that the inevitable-discovery doctrine permits the introduction of evidence originally obtained by unconstitutional conduct if the prosecution establishes by a preponderance of the evidence that it would have been lawfully discovered). Accordingly, we affirm the district court's order granting Nye's suppression motion.

_____, J.
Hardesty

We concur:

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Stiglich

CADISH, J., with whom PICKERING, C.J., and SILVER, J., agree, concurring in part and dissenting in part:

I agree with the majority that the search incident to arrest was unlawful, but disagree with the majority's conclusion that the inventory search was invalid. While an officer must produce an inventory list following an inventory search, *see State v. Greenwald*, 109 Nev. 808, 811, 858 P.2d 36, 38 (1993) (holding that "[w]ithout an inventory, we can have no inventory search"), this court's precedent does not require an itemized list of the contents of a container for the inventory search to be valid. And in my view, neither the United States Constitution nor the Nevada Constitution requires such specificity. Rather, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). To that end, our jurisprudence scrutinizing the sufficiency of an inventory search simply focuses on whether the inventory was a ruse or sham to conduct an illegal search. *See, e.g., Diomampo v. State*, 124 Nev. 414, 432, 185 P.3d 1031, 1042 (2008) (observing that an "inventory search must not be a ruse for general rummaging in order to discover incriminating evidence" (quoting *Greenwald*, 109 Nev. at 810, 858 P.2d at 37 (internal quotation marks omitted))); *but cf. Greenwald*, 109 Nev. at 810, 858 P.2d at 37-38 (concluding that a search was merely a ruse where "[t]he contraband . . . was found only after a most intense and minute search of virtually every square inch of Greenwald's motorcycle" and "the officer did not even pretend to prepare a complete inventory of all of the items that were the product of his extensive search").[1]

---

[1]Federal jurisprudence also addresses the constitutionality of inventory searches in the context of whether the search was merely a ruse for an otherwise impermissible search. For example, in *Florida v. Wells*,

The majority's decision does not address this jurisprudence, and Nye does not even argue that the booking deputy's inventory search was a ruse for an otherwise illegal investigatory search. On the contrary, the undisputed evidence in the record shows that the inventory search here was *not* such a ruse. The booking deputy testified that the department's general practice is to "[s]ometimes" "just put 'bag'" as a bulk item instead of providing an itemized list. She also testified that even if the arresting officer does not discover contraband, she must conduct a second search to ensure that no contraband enters the jail. She explained that she would rather *not* find contraband in an arrestee's items because she does not want to become a witness in the case. This testimony is evidence that the booking deputy was *not* conducting the search with the intent to incriminate Nye, nor as a pretext for an otherwise impermissible search. Rather, the testimony and other evidence indicates that she was following established practices in good faith. The district court found this testimony credible, and there is no basis in the record to conclude otherwise.

Further, although I agree with the majority's conclusion that Nye's backpack likely contained items other than the confiscated contraband, I disagree that an inventory that fails to list these items cannot be a *true* inventory. And the majority does not cite any authority supporting such a conclusion. Instead, it cites two cases wherein we invalidated vehicle searches under significantly different circumstances. In *Weintraub v. State*, 110 Nev. 287, 288, 871 P.2d 339, 339 (1994), an officer impounded

---

495 U.S. 1, 4 (1990), on which the majority relies, the United States Supreme Court based its holding "on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."

Weintraub's vehicle and conducted an inventory search of its contents. Weintraub established that his "vehicle contained approximately one hundred items including valuable items . . . such as Weintraub's wallet which contained money and identification, an additional $150.00 in cash found in the center console, and an adding machine." *Id.* at 289, 871 P.2d at 340. Because the inventory listed only eight items, none of which were Weintraub's valuables, we concluded that the inventory list did not serve the purposes of an inventory search. *Id.* And in *Greenwald*, 109 Nev. at 809, 858 P.2d at 37, the officer conducted an extremely thorough search of Greenwald's motorcycle, "examining the contents of the gas and oil tanks and even dismantling a flashlight." His failure to produce a detailed inventory revealed "that the officer was not doing what he was doing just for the sake of taking inventory of Greenwald's 'valuables,'" *id.* at 810, 858 P.2d at 38, and was instead searching for contraband, *id.* at 809, 858 P.2d at 37.

Here, however, the arresting officer found and confiscated the contraband *before* the inventory search. And the booking deputy's unrefuted testimony makes clear that she was not motivated to incriminate Nye, and in fact would prefer not to. Further, the evidence suggests that Nye was present during the inventory search, after which her items were safely placed in a numbered holding bag. Nye did not argue—let alone establish—that her backpack contained valuable items that warranted inventorying. And in fact she signed the inventory copy upon her release, acknowledging the receipt of all her property. In the absence of any evidence that the booking deputy was acting in bad faith, these procedures adequately served the purposes of an inventory search. *See Weintraub*, 110 Nev. at 289, 871 P.2d at 340 (describing the purpose of an inventory search

as "protecting the . . . owner's property, protecting the police against charges of theft, and protecting the police from possible danger"). Thus, based on these significant differences, *Weintraub* and *Greenwald* do not, in my view, mandate invalidating the inventory search here.

Finally, although the majority focuses on the State's failure to establish that the booking deputy followed official procedure, inventory-search analysis should instead focus on whether the search was *reasonable*, which does not necessarily require adherence to an official procedure. The majority relies on *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976), in which the United States Supreme Court concluded that "inventories pursuant to standard police procedures are reasonable." In doing so, the Court provided a *sufficient* condition for establishing reasonableness, i.e., conformance to police procedures is *sufficient* to establish that an inventory search is reasonable. But the majority seems to misinterpret it as a *necessary* condition, i.e., an inventory search *must* conform to police procedures in order to be reasonable. This is simply illogical. In fact, the Supreme Court reiterated that "[t]he question is rather whether the search was *reasonable* under the Fourth Amendment." *Id.* (quoting *Cooper v. California*, 386 U.S. 58, 61 (1967)). Thus, an inventory search that does not follow official procedures can still be constitutional, so long as it is reasonable. *See, e.g., United States v. Taylor*, 636 F.3d 461, 465 (8th Cir. 2011) ("Even if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search."). For the reasons stated above, I would conclude that the search here was reasonable. Thus, even if the booking deputy failed to follow official procedure, the search was nevertheless constitutional. I would therefore apply the inevitable-discovery doctrine here and reverse the

district court's suppression of the drugs and drug paraphernalia. *See Davis v. United States*, 564 U.S. 229, 244 (2011) (acknowledging that "[s]uppression would thus be inappropriate . . . if the inevitable-discovery exception were applicable [here]").

_____, J.
Cadish

We concur:

_____, C.J.
Pickering

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A