137 Nev., Advance Opinion 57

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JAY LESLIE JIM, A/K/A JAY LEE JIM, A/K/A LITTLE JAY, A/K/A LITTLE J., Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 81545 **FILED** SEP 23 2021 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a guilty plea, of trafficking a schedule I controlled substance under NRS 453.3385(1)(b) and possession of a firearm by a prohibited person under NRS 202.360(1). Fourth Judicial District Court, Elko County; Nancy L. Porter, Judge.

*Affirmed.*

Jeff Kump, PLLC, and Jeffrey J. Kump, Elko,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Tyler J. Ingram, District Attorney, and Jeffrey C. Slade, Deputy District Attorney, Elko County, for Respondent.

_____

BEFORE THE SUPREME COURT, CADISH, PICKERING, and HERNDON, JJ.

*OPINION*

By the Court, PICKERING, J.:

Following a lawful stop and arrest, an Elko Police Department (EPD) officer found contraband in appellant Jay Jim's car. The officer

21-27502

observed the contraband during a warrantless inventory search that produced no formal inventory. After the State brought criminal charges against Jim, he filed a motion to suppress the evidence recovered from the vehicle, alleging that the items were the products and fruits of an illegal search. The district court denied the motion on the ground that the officer validly discovered the evidence under the plain-view exception to the warrant requirement of the United States and Nevada Constitutions. Jim appeals from his subsequent judgment of conviction, arguing that the plain-view exception does not apply because the officer did not complete the inventory. But because the officer's presence in the vehicle was legally justified at the time he observed the contraband, we hold that the plain-view exception to the warrant requirement applies and therefore affirm.

I.

Officers Joshua Chandler and Jeremy Shelley of the EPD responded to a report of suspicious activity at the Red Lion Hotel parking lot in Elko. When the officers arrived, they encountered Jim attempting to start a silver Chevrolet Impala that he did not own. After calling the car's registered owners and confirming that Jim planned to purchase the Impala, the officers told Jim that they would take "enforcement action" if he drove the car, because its registration was expired. But Jim did not heed this warning—one day later, Chandler saw and stopped Jim driving the same Impala in Elko's West Sage area, still with expired registration. Based on Jim's past failures to appear in court, Chandler arrested Jim for failure to produce valid registration, insurance, and a current driver's license, and for failure to wear a seatbelt.

Shelley responded to the scene as back-up, and after Chandler handcuffed Jim and placed him in the back of the patrol car, Shelley began

an impound inventory of the Impala. Under EPD policy, if a car's driver is arrested and is not its registered owner, then the car will be impounded and "an impound inventory will be done and given to the tow truck driver." A different EPD policy applies if the car has "evidentiary value": "When impounding a vehicle of evidentiary value, the vehicle will be secured with evidence tape and the officer will follow the vehicle . . . to the police garage where it will be secured for processing." Shelley testified that he initially entered the Impala under the policy for impounded vehicles without evidentiary value, to either turn the car off or retrieve the keys, when he saw the butt of a Glock handgun and two small bags of a crystalline-like substance wedged between the driver's seat and center console. Shelley immediately recognized these items as contraband. Shelley and Chandler photographed the firearm and bags in place and on the front seat of the Impala before Shelley removed the items and secured them in his patrol car.

Shelley testified that upon finding the contraband items, he determined that the Impala may have evidentiary value. So, in accordance with the EPD policy for vehicles with evidentiary value, he seized the Impala, followed the car to the police garage, and delivered the car to Officer Jason Checketts, who placed evidence tape on its entry points. At the station, Shelley determined that the Glock handgun had been reported stolen, and the crystalline-like substance tested presumptively positive for methamphetamine. With this evidence as grounds for probable cause, Officer Matthew Miller applied for and received a warrant to search the Impala. On executing the warrant, Miller recovered a blue Superior Balance digital scale, a black Weighmax digital scale, and "a paper receipt containing methamphetamine" from the Impala. Miller listed these items

on the warrant log, but at no point did Miller, Shelley, or any other EPD officer complete an inventory of personal items in the Impala.

The State charged Jim with trafficking in a schedule I controlled substance and possession of a firearm by a prohibited person and sought punishment under the habitual criminal statute. Jim moved to suppress all evidence recovered from the Impala, alleging that the items were the products and fruits of an illegal search. But the district court concluded that Shelley recovered the firearm and methamphetamine under the plain-view exception to the Fourth Amendment's warrant requirement and denied Jim's motion. Jim pleaded guilty to one count of trafficking a controlled substance under NRS 453.3385(1)(b)[1] and one count of possession of a firearm by a prohibited person under NRS 202.360(1). As a term of his plea agreement, Jim reserved the right to appeal the suppression decision and now challenges the district court's denial of his motion to suppress and the resulting judgment of conviction.

II.

The United States and Nevada Constitutions both guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV; Nev. Const. art. 1, § 18; *see also State v. Beckman*, 129 Nev. 481, 486, 305 P.3d 912, 916 (2013). A warrantless search is per se unreasonable unless an exception to the warrant requirement applies. *State v. Lloyd*, 129 Nev. 739, 743, 312 P.3d 467, 469 (2013). This court reviews de novo whether

---

[1]The parties stipulate to correct a clerical error in the judgment of conviction indicating that Jim was convicted of trafficking in a schedule I controlled substance under NRS 453.3385(1)(c) by conforming the judgment to the court's sentencing minutes, which indicate that Jim was convicted of trafficking in a schedule I controlled substance under NRS 453.3385(1)(b).

a valid exception to the warrant requirement applies. *See Beckman*, 129 Nev. at 485-86, 305 P.3d at 916 (holding that this court reviews a district court's denial of a motion to suppress de novo as to legal conclusions and that the reasonableness of a search is a legal inquiry); *Scott v. State*, 110 Nev. 622, 628, 877 P.2d 503, 507 (1994) (noting that a non-owner driver has a reasonable expectation of privacy in a vehicle that he or she lawfully possesses).

The "plain-view" exception to the warrant requirement applies when (1) an officer is lawfully present in a place where evidence can be viewed, (2) the item is in plain view, and (3) the item's incriminating nature is immediately apparent. *Horton v. California*, 496 U.S. 128, 136 (1990); *State v. Conners*, 116 Nev. 184, 187 n.3, 994 P.2d 44, 46 n.3 (2000). Jim does not contest that the items in question here were in plain view once Shelley entered the Impala, that Shelley immediately recognized the incriminating nature of the items, or that towing of the Impala was reasonable. Accordingly, the narrow issue here is whether Shelley was lawfully present in the Impala when he entered the car to conduct a standard inventory search but never completed the inventory.

To be "lawfully present" under the plain-view exception, a warrant or warrant exception must justify the officer's presence in the first instance. *See Horton*, 496 U.S. at 136 (holding that the officer must not have "violate[d] the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"). And an inventory search carried out in good-faith compliance with "standardized official department procedures" is a well-established exception to the Fourth Amendment's warrant requirement. *Weintraub v. State*, 110 Nev. 287, 288, 871 P.2d 339, 340 (1994) (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976)); *see also*

*Colorado v. Bertine*, 479 U.S. 367, 374 (1987). An officer's compliance with standard procedures ensures that an inventory search is truly "designed to produce an inventory" and is not just "a ruse for a general rummaging . . . to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Applying this standard, this court has held that without a sufficiently complete inventory of the subject vehicle or item searched, the officer failed to comply with the applicable department inventory procedures, rendering the inventory warrant exception inapplicable. *State v. Greenwald*, 109 Nev. 808, 810-11, 858 P.2d 36, 38 (1993) ("Without an inventory, we can have no inventory search."); *see also State v. Nye*, 136 Nev. 421, 423-24 468 P.3d 369, 371-72 (2020); *Weintraub*, 110 Nev. at 289, 871 P.2d at 340. To wit, in *State v. Nye*, this court held that the inventory search was invalid because the officer only listed "bag" on the inventory log instead of listing the items in the bag, as was required under the policy. *Id.* at 424, 468 P.3d at 372-73. The booking officer further failed to comply with department policy by not conducting the search in view of a camera, signing the inventory receipt, or testifying as to how the search was conducted. *Id.* at 424, 468 P.3d at 373.

While an officer's failure to complete an inventory per department policy may foreclose the inventory warrant exception, such a failure does not per se establish that an officer's motive for *beginning* an inventory was a subterfuge. *See Wells*, 495 U.S. at 4 ("[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."); *United States v. Garay*, 938 F.3d 1108, 1111-12 (9th Cir. 2019) (noting that an inventory search is valid if the search motive is administrative and holding that officers' failure to create an inventory sheet did not render the search motive as pretextual). And, unlike *Nye*

where the searching officer strayed far afield from the applicable inventory policy, Shelley complied with the EPD policy for impounded vehicles when he entered the Impala to inventory its contents, which he had a legal right and obligation to do. *See Collins v. State*, 113 Nev. 1177, 1181, 946 P.2d 1055, 1059 (1997) (holding that an officer has a "right and obligation" to enter a vehicle to inventory its items for safekeeping). While lawfully present in the vehicle to conduct a standard inventory—to that point pursuant to and consistent with EPD policy—Shelley saw the firearm and bags of a crystalline-like substance in plain view between the driver's side seat and center console, and he immediately recognized those items as contraband based on his law-enforcement training. Shelley then changed course and followed the applicable EPD policy for vehicles with evidentiary value by halting his search, following the Impala to the police garage, directing Checketts to secure the vehicle with evidence tape, and seeking a search warrant. Shelley very well could have continued and completed the inventory search at that time, thus inevitably discovering all of the items that EPD eventually recovered under the warrant. Instead, Shelley halted the search and sought and obtained a search warrant, consistent with the Fourth Amendment.

Jim further argues that Shelley failed to comply with EPD policies by not having the Impala secured with evidence tape until after the vehicle was towed to the police garage. But this is beside the point—Shelley's alleged deviation from the policy was slight and does not show that his search motive was pretextual because Shelley did not continue his search at the scene. Indeed, EPD did not recover further incriminating evidence before Checketts secured the vehicle with evidence tape and Miller obtained and eventually executed a search warrant.



## III.

Shelley's close adherence to EPD policies, along with his decision to terminate a legal inventory search to secure a warrant, show that his motive was administrative and not an investigatory ruse. Shelley was lawfully present in the Impala when he saw the firearm and bags of methamphetamine in plain view. *See Horton,* 496 U.S. at 135 (holding that the plain-view exception applies when "a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object") (citing *Harris v. United States,* 390 U.S. 234, 235-36 (1968) (holding that an officer was lawfully present for purposes of the plain-view exception when he entered a car to roll up the windows pursuant to a police department policy concerning impounding vehicles and found incriminating evidence in plain view)). And the plain-view warrant exception therefore applies to validate Shelley's seizure of the firearm and bags of methamphetamine, along with the items recovered under the warrant. *See Collins,* 113 Nev. at 1182, 946 P.2d at 1059 (holding that warrant was valid when premised on items seized under valid warrant exception). We accordingly affirm.

_____, J.
Pickering

We concur:

_____, J.
Cadish

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A