140 Nev., Advance Opinion 33

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JESSE CALVIN GILBERT,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 85564<br><br>**FILED**<br><br>MAY 09 2024<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a no-contest plea, of ex-felon in possession of a firearm. Tenth Judicial District Court, Churchill County; Thomas L. Stockard, Judge.

*Affirmed.*

Evenson Law Office and Steve E. Evenson, Fallon,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Arthur E. Mallory, District Attorney, and Chelsea D. Sanford, Senior Deputy District Attorney, Churchill County,
for Respondent.

---

BEFORE THE SUPREME COURT, CADISH, C.J., and PICKERING and BELL, JJ.

 

24-16250

## OPINION

By the Court, CADISH, C.J.:

The inventory search is a well-established exception to the warrant requirement of the Fourth Amendment. Generally, if an inventory search complies with standardized procedures, it is reasonable and therefore constitutional. We have previously recognized that even when an inventory search does not comply with standardized procedures, it may still be constitutional if it is reasonable under the totality of the circumstances. We are called on today to address how courts should conduct this reasonableness analysis. First, we clarify that while an inventory search cannot be a ruse for general rummaging, an investigatory motive does not necessarily invalidate an inventory search so long as the search that occurred is the same as the inventory-based search that would have happened absent any such motivation and the circumstances leading to the search were not created as a ruse to establish a basis for that search. Instead, a court deciding a suppression motion must determine the search's reasonableness under the totality of the circumstances by evaluating (1) the extent to which law enforcement departed from the standardized procedures, (2) whether the scope of the search was as expected in light of the underlying justifications for inventory searches, and (3) whether the inventory produced served the purposes of an inventory search.

Here, a law enforcement deputy pulled over appellant Jesse Calvin Gilbert because the car Gilbert was driving did not have an operating license plate light. As Gilbert had an active warrant, the deputy arrested him. During the subsequent warrantless search of the vehicle, the deputy made several statements that indicated the deputy hoped to locate incriminating evidence in the vehicle. While searching, the deputy found a

SUPREME COURT
OF
NEVADA

(O) 1947A

2

handgun under the driver's seat. Gilbert was charged with ex-felon in possession of a firearm and moved to suppress the evidence on the basis that the search was not a true inventory search, but rather a ruse to conduct an investigatory search. Finding that the deputy appropriately impounded the vehicle and the inventory search was reasonable, the district court denied the motion. Gilbert appeals from his subsequent conviction based on the search and resulting unsuppressed evidence.

Perceiving no error in the district court's decision denying the motion to suppress, we affirm. The investigatory motive here does not invalidate the inventory search because the search that occurred was precisely the same as the search that would have occurred absent the impure motivation. Because the deputy properly stopped Gilbert for the nonfunctioning license plate light and arrested Gilbert on the outstanding warrant, the deputy was required under police policy to tow the car Gilbert was driving. Therefore, the search that uncovered the gun would have occurred pursuant to the inventory search policy even absent the deputy's investigatory motives. Additionally, we conclude that while the inventory search here did not comply with standardized policies, it passes constitutional muster because it was reasonable under the totality of the circumstances, as the district court concluded.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours, Deputy Nollan of the Churchill County Sheriff's Office observed two vehicles enter a parking lot, meet up, and leave the parking lot a short time later. Deputy Nollan followed one of the vehicles and initiated a traffic stop because it did not have an operating license plate light. Appellant Jesse Calvin Gilbert, who was driving the vehicle, pulled over and stopped in a private residential driveway.

Deputy Nollan approached the vehicle and recognized Gilbert from prior law enforcement contact. Gilbert indicated to Deputy Nollan that he was driving on a suspended license. Deputy Nollan confirmed this information with dispatch and was informed that Gilbert had an active arrest warrant. Deputy Nollan arrested Gilbert, after which other officers, including Deputy Nollan's supervisor, arrived on the scene. Deputy Nollan told his supervisor that he wanted to search the car and that he intended to tow it.

Before Gilbert was transported to jail, he made a phone call to an unidentified woman. Either Gilbert or the unidentified woman asked Deputy Nollan if the woman could take the car, which Deputy Nollan refused because the vehicle was being illegally operated on a roadway, such that the vehicle had to be towed. Shortly after, a woman approached the officers and identified herself as Lauren Sealock. She asked the officers if she could take the vehicle, stating that she was a friend of the residents of the house in front of which the car was parked, to which Deputy Nollan said no. A different officer transported Gilbert to jail, and Deputy Nollan searched Gilbert's vehicle.

Among other items, Deputy Nollan found a handgun under the driver's seat approximately one minute into the search. The entire search, which was captured on Deputy Nollan's body-camera video, lasted roughly 15 minutes, during which Deputy Nollan searched the car door pockets, the floor, under the seats, and in the trunk of the car. During the search, another deputy asked Deputy Nollan if he found anything, to which Deputy Nollan responded "not yet" and then "not yet anyway." Deputy Nollan did not apply for or obtain a search warrant.

During the search, the officers interacted with two more people: another unidentified woman and the owner of the residence where Gilbert

had pulled over. The woman allegedly co-owned the car Gilbert was driving and requested to take the vehicle. Deputy Nollan denied this request. The owner of the residence asked the officers what was happening and indicated he needed to leave. Later, at the hearing on the motion to suppress, the owner testified that he never gave Gilbert permission to park in his driveway.

After the search, Deputy Nollan completed a Churchill County Sheriff's Office Vehicle Inventory/Impound Sheet. On that sheet, Deputy Nollan listed the following items as "property, tools, or other items in the vehicle": set of golf clubs, two earrings white metal/white stone, black metal ring, two air rifles, and miscellaneous trash. Deputy Nollan failed to include on the inventory sheet several other items that were in the car, including a glass pipe, a substance he suspected to be methamphetamine, and the handgun.

Gilbert was formally charged by information with one count of ex-felon in possession of a firearm. Gilbert filed a motion to suppress evidence of the gun, arguing that the inventory search was a "ruse for the purposeful and general means of discovering evidence of a crime." (Internal quotation marks omitted.) Respondent State of Nevada opposed, arguing the vehicle was appropriately impounded and the inventory of the vehicle was not unlawfully excessive.

At the hearing on the motion, Deputy Nollan testified that he stated he was going to tow the vehicle because "[he] was arresting the driver who was also parked in a private driveway." After reviewing his body-camera footage, he admitted that during the stop, he planned to tow the vehicle because it was being operated illegally on the roadway, i.e., dispatch confirmed that Gilbert had a suspended driver's license. On cross-examination, he stated that he noticed the license plate light was out on

Supreme Court
OF
Nevada

(O) 1947A

Gilbert's car when it left the parking lot. When asked about his comment that he wanted to go through the car, Deputy Nollan testified that "[i]t was my vehicle stop. It was my arrest. It was my scene. I told my supervisor I wanted to—that I wanted to go through the vehicle because that's why. It was my arrest . . . I wanted to be responsible for it." *Id.* at 74-75. Deputy Nollan acknowledged that he does not always conduct a vehicle inventory following an arrest, but he wanted to do so in this case because "[he] was relatively new on the—on patrol. [He] wanted the experience. [He] wanted to be responsible for it."

Deputy Nollan also testified that the two vehicles meeting in the parking lot "played a part" in his stopping Gilbert and towing the vehicle because he believed the meeting was suspicious, he believed he would find drugs in the car and that was a substantial reason why he decided to search and tow the vehicle. He also testified that he suggested his supervisor search Gilbert's wallet because he thought it might have dope in it. Deputy Nollan acknowledged that he located a handgun, a glass pipe, and what he presumed to be methamphetamine but did not list them in his inventory. Deputy Nollan, however, listed the gun and possible drugs in his report and turned all three items over to the task force officer. Deputy Nollan admitted that he "made mistakes as far as what items [he] did not list on the form" and lacked proper diligence and documentation for all the items in the car.

Relying on *State v. Nye*, 136 Nev. 421, 468 P.3d 369 (2020), the district court denied Gilbert's motion, finding that the inventory search of Gilbert's vehicle was reasonable based on the totality of the circumstances, including that (1) law enforcement had an unquestionable right to tow the vehicle because Gilbert was arrested, the car was inoperable due to a nonfunctioning license plate light, and it was dark; (2) the inventory search did not exceed the scope of a proper inventory; (3) the search was recorded

on a body-worn camera; and (4) Deputy Nollan produced a nearly completed inventory sheet. The district court found, however, that Deputy Nollan's failure to produce a complete inventory sheet and clear motivation to search the car because he believed he would find drugs weighed against reasonableness.[1]

Gilbert entered a conditional no-contest plea to ex-felon in possession of a firearm, wherein he preserved his right to appeal on the basis that the district court erred in denying his motion to suppress. The district court entered a judgment of conviction on the no-contest plea. Gilbert now appeals.

## DISCUSSION

"A motion to suppress presents mixed questions of law and fact." *State v. Lloyd*, 129 Nev. 739, 743, 312 P.3d 467, 469 (2013). "A district court's legal conclusion regarding the constitutionality of a challenged search receives de novo review." *Id.* at 743, 312 P.3d at 469. Because Gilbert does not challenge the district court's factual findings and instead challenges only its legal conclusions that the search was valid and reasonable, we apply a de novo standard of review. *State v. Beckman*, 129 Nev. 481, 486, 305 P.3d 912, 916 (2013) (reviewing de novo the issue of reasonableness in the Fourth Amendment context).

The Nevada Constitution and United States Constitution both prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Nev. Const. art. 1, § 18. "Under these cognate provisions of our federal and state

---

[1]The district court also found the inevitable discovery doctrine was inapplicable. We agree because the search conducted by Deputy Nollan was the only inventory search that was conducted or would have been conducted on the vehicle. The State does not argue on appeal that the inevitable discovery doctrine applies.

constitutions, warrantless searches are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Lloyd*, 129 Nev. at 743, 312 P.3d at 469 (internal quotation marks omitted). Nevada recognizes inventory searches as one such exception to the warrant requirement. *Weintraub v. State*, 110 Nev. 287, 288, 871 P.2d 339, 340 (1994). The purpose of the inventory search exception is to protect an individual's property while it is in the custody of the police, to ensure against claims of damaged or missing property, and to guard the police against danger. *Colorado v. Bertine*, 479 U.S. 367, 372-73 (1987). In *Weintraub*, we held that an inventory search will pass constitutional muster if it is carried out pursuant to standardized official department procedures and administered in good faith. 110 Nev. at 288, 871 P.2d at 340. Further, "the officers conducting the search must produce 'a true inventory of' personal items found during the search." *Nye*, 136 Nev. at 423, 468 P.3d at 371 (quoting *Weintraub*, 110 Nev. at 289, 871 P.2d at 340). Indeed, without an inventory, there can be no inventory search. *State v. Greenwald*, 109 Nev. 808, 811, 858 P.2d 36, 38 (1993). However, "inventory searches need not be conducted in a totally mechanical, all or nothing fashion." *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013) (quoting *United States v. Garreau*, 658 F.3d 854, 858 (8th Cir. 2011) (internal quotation marks omitted)). In *State v. Nye*, we observed that the failure to precisely follow the department's policies does not necessarily invalidate an inventory search, as the validity of the search turns on reasonableness. 136 Nev. at 425 n.3, 468 P.3d at 372 n.3 (stating that "an inventory search need not conform to official procedure to be valid, so long as the State can otherwise prove that the search was reasonable"); *see id.* at 426-28; 468 P.3d at 373-74 (Cadish, J., concurring in part and dissenting in part) (recognizing that Fourth Amendment jurisprudence focuses on reasonableness, and a

reasonableness evaluation "does not necessarily require adherence to an official procedure").

*While the search did not comply with the Churchill County Sheriff's Office Policy 3.415 procedure, it was reasonable under all the circumstances*

Inventory searches that comply with standardized procedures are reasonable—and thus constitutional—because the standardized procedures "ensure[ ] that an inventory search is truly designed to produce an inventory and is not just a ruse for a general rummaging . . . to discover incriminating evidence." *Jim v. State*, 137 Nev. 557, 560, 495 P.3d 478, 481 (2021) (internal quotation marks omitted); *see United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) ("The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence." (internal quotation marks omitted) (quoting *United States v. Marshall*, 986 F.2d 1171, 1175 (8th Cir. 1993))). In *Nye*, we acknowledged that an inventory search that does not fully comply with standardized procedures may still pass constitutional muster so long as it is reasonable. 136 Nev. at 425 n.3, 468 P.3d at 372 n.3. As reasonableness is the touchstone by which courts measure the constitutionality of police searches, an inquiry into an inventory search that does not comply with such procedures must focus on whether the police conduct was reasonable under the totality of the circumstances. *See Smith*, 715 F.3d at 1117 (holding an inventory search must be reasonable under the totality of the circumstances).

Today we clarify that this reasonableness evaluation is not dependent on the motive of law enforcement under a so-called pretext theory unless the inventory search itself would not have occurred or would

SUPREME COURT
OF
NEVADA

(O) 1947A

9

have been more limited absent the investigatory motive. Instead, we announce the factors a district court must consider in determining whether an inventory search is reasonable under the totality of the circumstances: (1) to what extent law enforcement departed from the standardized procedures, (2) whether the scope of the search is what one would expect in light of the underlying justifications of inventory searches, and (3) whether the inventory produced served the purpose of an inventory search. *Jim*, 137 Nev. at 561, 495 P.3d at 481 (noting law enforcement's deviation from the standardized policy was slight); *cf. United States v. Neugin*, 958 F.3d 924, 931 (10th Cir. 2020) (noting officers are entitled to some latitude in conducting their community caretaking role, but their actions must be "reasonably related in scope" to the underlying justification for the community caretaking exception to the warrant requirement (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1123 (10th Cir. 2010))); *cf. United States v. Rowland*, 341 F.3d 774, 782 (8th Cir. 2003) (concluding a search where law enforcement disregarded items without evidentiary value despite them being of possible monetary value suggested the search did not serve the purpose of an inventory search). These factors will properly focus the court on the search that actually took place and whether it is in reality an inventory search justifying an exception to the warrant requirement.

*The investigatory motive to search a vehicle does not alone make the search unconstitutional*

Gilbert argues that the district court erred in determining the search was reasonable despite Deputy Nollan's investigatory motive to search the car, which he expressed before ever searching the vehicle. Gilbert points to *Nye* for support that an inventory search cannot be reasonable where law enforcement does not comply with the standardized procedures for the search and the motive to conduct the search is impure.

SUPREME COURT
OF
NEVADA

(O) 1947A

10

The mere expectation that incriminating evidence may be found in a search is not impermissible pretext within the context of the Fourth Amendment. 3 Wayne R. LaFave, *Search and Seizure* 926 (6th ed. 2020). Rather, impermissible pretext within this context "arises out of the fact that the evidence is found in a search which would not have occurred at all but for the manipulation of circumstances and events by the police because of their desire to conduct a search that could not otherwise be lawfully made." *Id.* That is, an impermissible pretextual inventory search is one where law enforcement created the circumstances warranting the search to satisfy their investigatory desire. *See Jim*, 137 Nev. at 560, 495 P.3d at 481 ("While an officer's failure to complete an inventory per department policy may foreclose the inventory warrant exception, such a failure does not per se establish that an officer's motive for *beginning* an inventory was a subterfuge."); *see also Whren v. United States*, 517 U.S. 806, 816 (1996) (observing that although adherence to procedures shows lack of pretext, deviation from procedures does not prove or serve as an operational substitute for pretext). The suppression of evidence is not required when, even assuming a questionable motivation is dominant, "the Fourth Amendment activity undertaken is precisely the same as would have occurred had that intent or motivation been entirely absent from the case." 1 Wayne R. LaFave, *supra*, at 177.

Other courts have concluded this "would have . . . anyway" rationale applies in the context of inventory searches. *United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993) (quoting *United States v. Lillard*, 929 F.2d 500, 502 (9th Cir. 1991)). In *Bowhay*, the Ninth Circuit Court of Appeals explained that, in the context of inventory searches, dual motives— i.e., a motive to investigate for incriminating evidence and a motive to compile an inventory of an individual's property—do not make a search

SUPREME COURT
OF
NEVADA

(O) 1947A

11

pretextual and thus do not invalidate it. 992 F.2d at 231. The court observed that unlike in pretextual cases, department inventory procedures required that the officer take an inventory of all personal property, such that the officer had no discretion in initiating a search of the defendant's satchel, in which narcotics, a gun, and cash were found. *Id.* at 230-31. Other courts have agreed, observing that "[t]he police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." *Marshall*, 986 F.2d at 1175-76; *see also United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) (observing that the expectation and motivation to find criminal evidence does not constitute bad faith where good faith is a prerequisite of an inventory search). We agree that the "would have . . . anyway" rationale applies to inventory searches.

Here, we agree with the district court's conclusion that Deputy Nollan "clearly had motives to inventory the vehicle that were unrelated to the constitutionally recognized purpose of an inventory search." *See Bertine*, 479 U.S. at 372-73. Deputy Nollan's comments leading up to and during the search indicate that he was suspicious of the two vehicles meeting in the parking lot, and his belief that he would find drugs in the vehicle was a substantial reason why he decided to search and tow Gilbert's car. However, Deputy Nollan was legally permitted to initiate the traffic stop because the car did not have a functioning license plate light and was thus inoperable considering it was dark outside. *See* NRS 484D.115(4) ("Every passenger car, bus and truck under 80 inches in overall width must be equipped with a lamp so constructed and placed as to illuminate with a white light the rear registration or license plate and render it clearly legible from a distance of 50 feet to the rear."). Further, Gilbert was lawfully arrested due to an outstanding warrant, and officers removed him from the

scene. This left the car parked on private property without the permission of the property owner. While two individuals approached Deputy Nollan indicating they could remove the car from the property, including the claimed co-owner of the vehicle, the car was not operable at night. NRS 484D.115(4). Under these circumstances, Deputy Nollan had an unquestionable and undisputed right to tow the car under Churchill County Sheriff's Office Policy 3.415 (governing towing and storage of vehicles) as a vehicle that was illegally parked. Further Churchill County Sheriff's Office Policy 3.410 provides vehicles will be towed when the driver is arrested. Thus, the car would have been towed and inventoried under Churchill County Sheriff's Office policies regardless of Deputy Nollan's expressed expectation or hope to find drugs in the car. In other words, Deputy Nollan had a right and obligation to perform an inventory on the car. *See Collins v. State*, 113 Nev. 1177, 1181, 946 P.2d 1055, 1058-59 (1997) (recognizing that "police have a duty to inventory the contents of an automobile" for legitimate purposes). Gilbert does not dispute the constitutionality of the stop itself, his arrest, or that Deputy Nollan's decision to tow the vehicle complied with department polices. Therefore, we conclude Deputy Nollan's investigatory motive to search Gilbert's car did not invalidate the search because the inventory search would have occurred regardless of such a motive.

*Deputy Nollan's deviation from Churchill County Sheriff's Office Policy 3.415 is concerning*

Turning to the factors we announce today to evaluate the reasonableness of the purported inventory search under all the circumstances, we first address the extent to which Deputy Nollan strayed from the standardized procedure. First, Deputy Nollan complied with Churchill County Sheriff's Office Policy 3.410, which provides that a vehicle

will be towed in the event the driver of the vehicle is arrested. While the policy also permits a co-owner to take the vehicle if a deputy objectively determines the co-owner is capable of safely operating the vehicle, Deputy Nollan properly determined the vehicle could not be driven safely because it was dark outside and one of the license plate lights was nonoperational. Because Deputy Nollan was required to have the vehicle towed under these circumstances, he was also required to conduct an inventory search of the vehicle.

However, it is undisputed that Deputy Nollan failed to fully comply with Churchill County Sheriff's Office Policy 3.415 in that he failed to provide a detailed written description of the contents of *all* the personal property that was in the car. This policy provides:

> Any vehicle which is taken or removed from any location pursuant to the lawful authority of any Deputy, whether said vehicle is on public or private property, will be thoroughly inventoried as to its condition and contents . . . . Said inventory shall be recorded on a Vehicle Inventory Report form and will include a detailed written description of the contents and conditions of any items of personal property contained therein.

Deputy Nollan did properly identify the make and license number of the vehicle and its features and listed certain items of personal property on the inventory sheet. The district court's thorough order after a full evidentiary hearing noted Deputy Nollan acknowledged in his testimony that other items of personal property were in the car and not listed on the inventory, including "a pipe, a Halloween mask, what appeared to be two one-dollar bills, a cell phone, a basket of golf balls, a rangefinder, and a pack of cigarettes." The court also found the body camera footage showed other omitted items whose nature was not clear. While some items that were not

catalogued may fall under Deputy Nollan's miscellaneous trash listing on the inventory sheet, others did not fit in that category and were of the type the inventory policy would cover, such as the cell phone and rangefinder. Thus, as the district court properly concluded, Deputy Nollan deviated from the standardized policy by failing to provide a "detailed written description" of these items. Even Deputy Nollan acknowledged that he lacked proper diligence when documenting the items in the car. However, Deputy Nollan did not altogether disregard his duty to document the items in the car, and it is not clear that any of the omitted items were of value. *Compare United States v. Garay*, 938 F.3d 1108, 1112 (9th Cir. 2019) (concluding an inventory search was valid despite the officer failing to list some of the property in the inventory list), *with Weintraub*, 110 Nev. at 289, 871 P.2d at 340 (concluding an inventory search was unconstitutional where the inventory list included only 8 items, but the vehicle contained approximately 100 items including a wallet with money and identification and $150 in cash that were not listed). We conclude that while Deputy Nollan deviated from the standardized policy, and these deviations are concerning, he made a good faith effort and prepared a nearly complete inventory list with the items that appeared to him to be of potential value. Thus, this factor weighs against the reasonableness of the search, but not significantly so.

*The search performed did not exceed the scope expected of an inventory search*

The second metric in the reasonableness inquiry is whether the search's scope was as expected in light of the underlying justifications of inventory searches, i.e., to protect the owner's property interests and protect police from liability for missing property and against danger. Here, the entire search spanned approximately 15 minutes, and Deputy Nollan and

another deputy searched the pockets of the car doors, the floor, the seats, under the seats, the center console, and the trunk. As the district court concluded, all of these locations are areas in a vehicle that were "certain to be searched during an inventory." Thus, as the district court also properly concluded, the handgun, which was found under the seat, and the drugs, which were found in the console, were also "almost certain to be found if an inventory search were conducted," whether or not the officer inventorying the vehicle strictly adhered to the inventory search protocol. *See* 3 Wayne R. LaFave, *Search and Seizure* 863-64 (6th ed. 2020) (an inventory search customarily will "extend to all parts of the car where personal property might be found, and to include an inventory of containers found within the vehicle" (footnotes omitted)); *cf. Greenwald*, 109 Nev. at 809-11, 858 P.2d at 37-38 (concluding that a search exceeded the scope of an administrative search where the law enforcement officer examined the contents of the gas and oil tanks and even dismantled a flashlight). We thus conclude that the search's scope was appropriate for an inventory search.

*The search served the underlying purpose of the inventory search exception to the warrant requirement*

Finally, we conclude that Deputy Nollan's search served the purposes of an inventory search. *Bertine*, 479 U.S. at 372-73. Again, the inventory sheet prepared by Deputy Nollan did not include several items that potentially were valuable. In this way, the search fell short of serving the purpose of protecting Gilbert's property that was impounded and protecting police from claims that said property was lost or stolen while in police custody. The inventory sheet was not the only documentation of the search, however. Throughout the entire search, Deputy Nollan was wearing his body camera, and the entire search was captured by this recording. The district court found the footage "provided a relatively clear audio and video

recording of the inventory search." While it does not satisfy Churchill County Sheriff's Office Policy 3.415, the district court found that the recording showed Deputy Nollan handling virtually every item that was located in the car, which the parties do not dispute.[2] This is distinguishable from *Nye*, which involved an unrecorded search when the inventory search policy required it be performed on camera. Conversely, the inventory search policy here required no such recording, but the entire search was recorded on Deputy Nollan's body camera. Therefore, we conclude that the district court did not err in determining that the search performed by Deputy Nollan served the underlying purpose of the inventory search exception to the warrant requirement of the Fourth Amendment.

The district court extensively analyzed these factors in determining that the search was reasonable under the totality of the circumstances. Based on our independent review, we agree. While the failure to list several items in the car on the inventory is concerning and reduces the efficacy of the inventory procedure, weighing all of the circumstances under the factors we have identified leads us to conclude that the inventory search was reasonable and the district court correctly denied the motion to suppress.

## CONCLUSION

Even when a warrantless inventory search does not comply with the department policies and procedures, it may be constitutional if it is reasonable under the totality of the circumstances. We conclude that an investigatory motive does not necessarily invalidate an inventory search so long as the search that occurred is the same as the inventory-based search that would have happened even absent any investigatory or other intent or

---

[2]The body-camera footage of the search was not provided on appeal.

motivation. We hold instead that a court deciding a suppression motion in these circumstances must determine the search's reasonableness under the totality of the circumstances by evaluating (1) the extent to which law enforcement departed from the standardized procedure, (2) whether the scope of the search was as expected in light of the underlying justifications for inventory searches, and (3) whether the inventory produced served the purposes of an inventory search. We conclude that, after weighing these factors, the search here was reasonable, and we perceive no error in the district court's denial of Gilbert's motion to suppress. We therefore affirm the judgment of conviction.

_____, C.J.
Cadish

We concur:

_____, J.
Pickering

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A